## Wallaesa, Appellant, *v.* Wallaesa.

Argued September 29, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

194

*Alfred M. Nittle,* for appellant.

*John Henry Cericola,* for appellee.

OPINION BY ROSS, J., November 11, 1953:

This appeal raises the question whether a wife may recover from her husband, in an action of assumpsit, while the parties are separated but undivorced, one-half of the proceeds of the face value of a note which was executed to the parties in return for money lent to the maker by them during the period of their cohabitation as husband and wife.

The complaint alleges that $400, representing half of the face value of the note, was advanced by plaintiff out of her separate funds (the other half apparently having been supplied by defendant); that the promissory judgment note in question was executed by John Wallaesa to the parties for sufficient consideration on or about October 5, 1951 and was due one year after its date of execution; that the note by its terms authorized confession of judgment against the maker; that the note is now overdue, no payments having been made toward its satisfaction; that the maker is able to pay but refuses to do so; that on November 18, 1952 defendant "maliciously and without reasonable cause" deserted plaintiff and since that date has been living separate and apart from her; that defendant, despite repeated requests by plaintiff, has refused to enter confession of judgment on the note, or to deliver it to plaintiff to enable her to do so; and

that such conduct on his part is tantamount to a conversion thereof to his own use.

The court below sustained preliminary objections in the nature of a demurrer, dismissed the complaint and entered summary judgment for defendant on the ground that the relief sought was in substance a request for a partition of personalty owned by the parties as tenants by entireties, and that assumpsit would not lie to effect such partition. Plaintiff has appealed.

That the note is owned by the parties as tenants by entireties is abundantly clear from the allegation of the complaint itself. In Pennsylvania tenancy by entireties arises wherever there is a conveyance of either personalty or realty to a husband and wife, and its incidents obtain where the subject of ownership is a chose in action. *Madden v. Gosztonyi S. & T. Co.,* 331 Pa. 476, 200 A. 624; *Blumner v. Metropolitan Life Ins. Co.,* 362 Pa. 7, 66 A. 2d 245. Husband and wife do not each own a one-half or any divisible part of the property, but both own the whole of it; each is seized per tout et non per my. *Zipperlein Est.,* 367 Pa. 622, 80 A. 2d 817; *Wakefield v. Wakefield,* 149 Pa. Superior Ct. 9, 25 A. 2d 841.

The Married Women's Property Act of this Commonwealth (Act of June 8, 1893, P. L. 344, sec. 3, as amended by the Act of March 27, 1913, P. L. 14, sec. 1, 48 PS sec. 111, provides that ". . . a married woman may sue and be sued civilly, in all respects, and in any form of action, and with the same effect and results and consequences, as an unmarried person; but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property . . ." Undisputably the note here in question is not, as to her interest, the separate property of plaintiff within contemplation of the statute. As indicated supra, it is entireties property, and the

fact that plaintiff furnished part of the consideration for it does not militate against its status as such. *Hunt v. Mestrezat*, 361 Pa. 415, 65 A. 2d 389; *Uzarski v. Union National Bank*, 152 Pa. Superior Ct. 433, 33 A. 2d 459.

Appellant urges vigorously that her right to maintain this action at law emanates from the Act of May 1, 1913, P. L. 146, sec. 1, 48 PS sec. 114, which provides that ". . . any wife, who has been deserted, abandoned, or driven from her home by her husband, may sue her husband civilly, in any court of this Commonwealth having the jurisdiction, upon any cause of action now existing or hereafter accruing, with like effect as if such wife were a feme sole . . . Provided, however, That nothing in this act contained shall be deemed to destroy the right of survivorship in any land heretofore or hereafter conveyed to such wife and husband jointly." Desertion is alleged in the complaint but it is a legal conclusion of the pleader which, as distinguished from facts pleaded, is not admitted by the preliminary objection. *Narehood v. Pearson*, 374 Pa. 299, 96 A. 2d 895. For a determination of this appeal we shall nevertheless assume it established by competent evidence. As a feme sole trader, then, may plaintiff recover a portion of the entireties property in an action of assumpsit against her husband?

Appellant contends for an interpretation of the right conferred by the Act of May 1, 1913 upon a deserted wife to sue her husband as a feme sole "upon any cause of action" as a blanket power unrestrained by the nature of the property rights involved.

When the Married Women's Property Acts were enacted by the legislatures of the several states during the latter part of the nineteenth century, varying views were entertained by the courts of those states as to the effect of this new legislation upon tenancy

by entireties. Pennsylvania was among that group of states which held that the destroyed incidents of the husband's dominance and the wife's disabilities during coverture were incidents of the common-law marital status and not peculiarly incidents of tenancy by entireties and, therefore, that tenancy by entireties should continue to exist, although without such incidents. Under the modern Pennsylvania concept of such estate, neither party may exclude the other from occupancy; neither party alone may alienate or affect any part of the principal or income by separate action except that one spouse alone may execute a lease for the benefit of both (*O'Malley v. O'Malley*, 272 Pa. 528, 116 A. 500; *Wakefield v. Wakefield*, supra, 149 Pa. Superior Ct. 9, 25 A. 2d 841; *Lohmiller v. Gotwals*, 150 Pa. Superior Ct. 539, 29 A. 2d 206; but cf. *Schweitzer v. Evans*, 360 Pa. 552, 63 A. 2d 39); neither party has any advantages of separate credit, the estate being exempt from attachment for his or her debts; neither may determine succession, as the entire asset belongs absolutely to the surviving spouse; the interest of neither may be affected without notice to both, and both are necessary parties to litigation respecting the asset.[1] For a comprehensive compilation of cases illustrative of the principles governing incidents of tenancy by entireties, see *Madden v. Gosztonyi S. & T. Co.*, supra, 331 Pa. 476, 200 A. 624.

In *Collins v. Wilkinson*, 366 Pa. 108, 76 A. 2d 649, husband and wife acquired title to realty as tenants by entireties in 1928. In 1933 the property was sold at Treasurer's sale to the county commissioners for nonpayment of taxes. In 1938 the parties were di-

---

[1] "Tenancy by Entireties", 25 Temple Law Quarterly 28, 34-35, by Dr. Oval A. Phipps, formerly Professor of Law at Temple University School of Law, and presently Dean of the University of South Dakota School of Law.

vorced and subsequently both married again. No petition for partition was made in accordance with the Act of May 10, 1927, P. L. 884, 68 PS sec. 501, then in force. In 1943 the original husband-owner reacquired the property from the county and later died. His second wife (defendant), who was in possession, claimed title to the property as the widow and heir of the decedent. The first wife instituted ejectment proceedings, claiming title as surviving tenant by entireties. The Supreme Court affirmed the lower court's holding that the purchase by the husband in his lifetime was but a redemption of the property and, therefore, it inured to the benefit of both the husband and his former wife, whose interest as tenant by the entirety under the law as it then stood continued despite the divorce. The Court called attention to the amendment of May 17, 1949, P. L. 1394, 68 PS sec. 501, which provides that as to property acquired after September 1, 1949, divorce operates automatically to convert an entireties estate into a tenancy in common. We cite this case in detail not because of any factual similarity it bears to the present one but simply to emphasize the inviolability of an estate by entireties in this Commonwealth and the degree to which the unity of person aspect has been protected by our courts. It is against this background of law that appellant requests us to allow maintenance of an action at law to acquire for herself her half interest in entireties property.

The Married Women's Property Act of 1893, and likewise the Act of May 1, 1913, being in derogation of the common law and having been enacted prior to the Statutory Construction Act, are to be strictly construed.[2] No right is expressly conferred on a deserted

---

[2] Act of May 28, 1937, P. L. 1019, art. 4, sec. 58(8), 46 PS sec. 558(8).

wife to sue her husband for a division of entireties property. The legislature in enacting a statute is presumed to have been familiar with the law as it then existed and the construction which the courts had placed upon it. *Board of Christian Ed. of Presbyterian Church v. Philadelphia School District,* 171 Pa. Superior Ct. 610, 91 A. 2d 372. Since there is no express authority evidencing a contrary intention, we interpret the abandoned wife's right to sue "upon any cause of action" as excluding the right here contended for.

Although we have been cited to, and our independent research has revealed, decisions permitting one spouse an accounting of moneys in joint bank accounts held by husband and wife as entireties personalty, we do not consider them conclusive of the present issue for two reasons. First, deposits in bank accounts, by the agreement contained in the signature card, are easily available to either tenant and the bank is bound to honor the request for withdrawal by one of the parties. Second, in practically every one of these bank account withdrawal cases relief was sought in equity by a bill for an accounting. *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172; *Werle v. Werle,* 332 Pa. 49, 1 A. 2d 244; *Alcorn v. Alcorn,* 364 Pa. 374, 72 A. 2d 96. *Kaufmann v. Kaufmann,* 166 Pa. Superior Ct. 6, 70 A. 2d 481, was originally instituted in assumpsit to require a wife to account for withdrawals from a bank deposit held by entireties. The court transferred the case to the equity side for disposition. In *O'Malley v. O'Malley,* supra, 272 Pa. 528, 116 A. 500, upon which appellant relies heavily, a divorced wife sued her former husband in assumpsit for an accounting of rents collected by him on property conveyed to the parties while they were husband and wife but which, after they were separated he had leased and appropriated

the whole thereof to his own use and continued to do so though they were now divorced. The Supreme Court allowed the accounting. A reading of the opinion in its entirety convinces that the decision was based upon the fact of divorce, and there is no inference that plaintiff would have been awarded an accounting prior to the divorce while the parties were living apart. In fact, such inference is categorically rebutted by the statement of the Court at pages 533-534: "While the marriage subsists it is a matter of indifference which of the parties leases the property or which of them obtains the rents; presumptively the moneys received will be expended for the benefit of both of them. The unity of the relation of the parties results in a unity of estate; the leasing by either is for the benefit of them in that relation, and the rents paid to either is to him or her in that relation only. After a divorce, however, a different situation necessarily arises . . . ."

Nor does the construction of the Act of May 1, 1913 in the three cases which have been adjudicated by our appellate courts in the 40 years during which it has been in effect strengthen appellant's position. In *Ertel v. McCloskey,* 167 Pa. Superior Ct. 120, 74 A. 2d 652, a deserted wife owed apartment rent to the hotel in which she resided and the hotel refused to allow her to move her furniture until the bill was paid. The husband alone had signed the lease. The wife made a cash deposit on the rent and gave the hotel the personal check of her attorney and a personal note of her own, which note she subsequently paid. Her furniture was distrained until the attorney's check had cleared. The hotel assigned its claim against the husband to the wife's brother. This Court, speaking through Judge RENO, stated at page 127: "Before the divorce, Mrs. McCloskey could have taken the assignment in her own name and sued him [her husband]

upon it. Act of May 1, 1913, P. L. 146, §1, 48 P.S. §114. The divorce did not bar her claim . . . [citing cases]. Or, without taking an assignment she could have sued him, before and after the divorce, for restitution, since she paid the Drake bill to protect her own property. Restatement, Restitution, §103 . . . . And, since restitution is redressible in assumpsit, she could have assigned that claim." *Turner v. Turner,* 169 Pa. Superior Ct. 120, 82 A. 2d 320, involved the situation of a wife who, at her husband's request, had paid him out of her separate funds, accumulated before the marriage, a sum of money for repairs and improvements made on *his* property. We allowed recovery in assumpsit since the wife unquestionably had saved her husband the expense of making the repairs to his separate property by paying for them out of her separate property at his request. The most recent construction of the 1913 Act is the decision in *Adler v. Adler,* 171 Pa. Superior Ct. 508, 90 A. 2d 389. There a wife living apart from her husband was permitted to recover in assumpsit moneys expended by her out of her separate estate for support, maintenance and necessaries for herself and their children. She had secured a support order, so the question of her right to support and whether she left without legal cause had been adjudicated in her favor. Judge GUNTHER stated at page 510: "Where, as here, a deserted wife has used or applied her own separate estate in the discharge of an obligation resting primarily on the husband, the law imposes a quasi-contractual relationship to reimburse the deserted wife for expenditures which she had expended from her separate estate in providing herself with support in a manner in keeping with his financial circumstances and earning power." None of these cases bear any factual resemblance to the present one. No entireties property was involved

in any of them. The right of assignment of a claim, restitution of moneys expended out of a wife's separate estate to benefit her husband's separate property and of moneys expended for support, the legal duty of which rests on the husband—all are within contemplation of the statute, but they add nothing toward determination of the present issue.

Appellant argues that her husband's retention of exclusive possession of the note was tantamount to an offer to destroy the tenancy, which offer she accepted by instituting this action. True, tenancy by entireties may be terminated by agreement of the parties. *Kauffman v. Stenger,* 151 Pa. Superior Ct. 313, 30 A. 2d 239. Husband and wife may, by their joint act, sell or dispose of their estate or strip the estate of its entirety attributes and create a wholly different estate in themselves. Where this has been done, however, there has been *actual* agreement. *Interboro Bank & Trust Co. of Prospect Park, Guardian, Appeal,* 359 Pa. 315, 59 A. 2d 101. We can conceive of nothing more fictional than to term the conduct of these parties an "agreement". Suffice it to say that it falls far short of so classifying.

We agree with the learned court below that "Upon the facts averred the complaint shows with certainty that the law will not permit a recovery by plaintiff-wife." Consequently, summary judgment was properly entered. *Sun Ray Drug Co. v. Lawler,* 366 Pa. 571, 79 A. 2d 262.

Judgment affirmed.