539 A.2d 1354

Harold David TALLMAN, Administrator of the Estate of
Irene B. Tallman, Deceased, Appellee,

v.

AETNA CASUALTY AND SURETY COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 2, 1987.

Filed April 6, 1988.

Darryl R. Slimak, State College, for appellant.

William Carlucci, Williamsport, for appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

Today we are asked to determine whether a provision in an automobile insurance policy which prohibits the stacking of underinsurance coverage where multiple vehicles are insured under the policy should be declared invalid as contrary to the public policy expressed in the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701 *et seq.* We affirm the trial court's ruling which determined that such a provision is void as violative of public policy.

The instant action was commenced by Appellee, administrator of the estate of his deceased wife, following a two car automobile accident. The decedent who was operating a Renault automobile suffered fatal injuries when a vehicle driven by another individual crossed the center line and collided with her vehicle. The limits of a policy issued to the other driver, $95,613.00 were received by Appellee. Since Appellee's damages exceeded this figure, a declaratory judgment action was brought against Appellant who had issued a policy of insurance to the decedent as a named insured which covered both the Renault automobile and a Chevrolet pick-up truck. The policy contained a maximum liability limit of $100,000.00 and a maximum limit of liability for uninsured and underinsured motorist coverage of $35,000.00. Because the policy issued by Appellant provided coverage for two vehicles Appellee sought to "stack" the underinsurance coverage to recover $70,000.00. Appellee averred that the loss suffered exceeded the combined total of liability limits received from the other driver's insured and the $70,000.00 of underinsurance coverage sought under the policy issued by Appellant. However, in determining whether such coverage should be obtained the trial court was presented with certain limitations contained in the amendments to the policy. The following provision was found under "Part C. Uninsured Motorists Coverage", "Limit of Liability" "B.":

> If a single limit of liability for bodily injury liability is shown in the Declarations for this coverage, this is our maximum limit of liability for all damages for bodily

injury resulting from any one auto accident. We will apply this limit to provide any separate limits required by law for Uninsured and Underinsured motorist coverage. However, this provision will not change our total limit of liability.

Paragraph "C.2." further provided:

With respect to damages caused by the owner or operator of an underinsured motor vehicle, the applicable limit of liability under paragraph A or B above is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the accident.

Judgment was entered for Appellee after the court determined that the above provisions, which purport to prohibit stacking of underinsurance coverage for multiple vehicles insured under one policy, were invalid as violative of the public policy expressed in the Motor Vehicle Financial Responsibility Law, hereinafter the MVFRL.

The task of interpreting a policy of insurance is designed so as to effectuate the intent of the parties to the contract as manifested by the language contained in the written document. Language found in the contract which is clear and unambiguous must be enforced unless such provision violates public policy. *Votedian v. General Accident Fire and Life Assurance Corporation,* 330 Pa. Super. 13, 16–17, 478 A.2d 1324, 1326 (1984), *citing Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 306, 469 A.2d 563, 566 (1983). The clarity or ambiguity of the instant policy provisions which disallow the stacking of underinsurance coverage are not at issue in this case. We are only asked to determine whether these provisions are repugnant to the policy underlying the MVFRL. Since a specific statement of findings and purpose is not contained within the MVFRL, we must be guided by the established rules set forth in the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501 *et seq.* This Act declares that the intention of the General Assembly is to be ascertained and effectuated when interpreting a statute. 1 Pa.C.S.

§ 1921(a). Words of a statute which are clear and free from ambiguity are not to be disregarded. 1 Pa.C.S. § 1921(b). And where words are not explicit, this court is to consider, among other matters, the following so as to ascertain the intent of the General Assembly:

(1) The occasion and necessity for the statute;

(2) The circumstances under which it was enacted;

(3) The mischief to be remedied;

(4) The object to be attained;

(5) The former law, if any, including other statutes upon the same or similar subjects;

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history;

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

The present law was enacted and prompted by growing dissatisfaction with the prior No–Fault Motor Vehicle Insurance Act.[1] *See: Wolgemuth v. Harleysville Mutual Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988). The No–Fault Act did not address either uninsured or underinsured coverage except to provide minimum limits for uninsured motorist coverage. Uninsured motorist coverage was required under the Uninsured Motorist Act.[2] The courts of this Commonwealth have been called upon to determine the purpose and policy behind these Acts as they relate to the "stacking" question.

In the seminal case of *Harleysville Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968) the legislative intent behind the uninsured motorist statute was examined to determine whether anti-stacking clauses were violative of the purpose of the Act. The court stated:

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.,* repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

2. Act of August 14, 1963, P.L. 109, 40 Pa.S.A. § 2000.

The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the Act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.

. . . .

We do not wish to imply that injured parties may be permitted to pyramid separate coverages so as to recover more than the actual loss .... We do hold, however, ... that where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss.

*Id.,* 429 Pa. at 395–396, 241 A.2d at 115.

Different classes of insured and their ability to stack uninsured coverage were outlined in *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984). Therein the court held that the decedent, the son of the named insured as well as a member of his household, was a "Class One" insured, an intended beneficiary of the policy, and entitled to "stack" coverages. The court recounted the justification for stacking:

[F]irst, ... it furthers the policies sought to be accomplished by the act; and second, that the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. The latter rationale is grounded in the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each.

*Id.,* 504 Pa. at 338, 473 A.2d at 1010.

Appellee aptly argues that "the same precedents that mandated a liberal intent and prohibited the exclusion of stacking in the *un* insured motorist context, should also now apply with respect to *under*insured motorist protection

under the Financial Responsibility Law." Appellee's Brief at 15. In positing that the rationale utilized in voiding prohibitions to stacking under the Uninsured Motorist Act should be applied to the instant law, Appellee, like the trial court, refers to the language of the MVFRL.

Initially, we turn to the Subchapters contained within the MVFRL and note that the provisions for both uninsured and underinsured motorist coverage were drafted together within Subchapter C. titled Uninsured and Underinsured Motorist Coverage. Appellee maintains, and we agree, that this factor is important to a determination of the legislative intent regarding the stacking question. The legislature in enacting a statute is presumed to have been familiar with the law as it then existed and the construction which the courts had placed upon such law. *Wallaesa v. Wallaesa,* 174 Pa.Super. 192, 100 A.2d 149 (1953). As recited, the stacking of uninsured benefits prior to the passage of the MVFRL was permitted. *See discussion supra.* When enacting the provisions for uninsured and underinsured motorists benefits together in Subchapter C. of the MVFRL, no express limitation regarding stacking was written into the law. We find this fact lends credence to Appellee's position that the legislature intended the stacking of uninsured benefits to continue, and by coupling uninsured and underinsured benefits within the same subchapter, the legislature intended for stacking of underinsured benefits to be permitted.

Appellee also points to the definitions found within the two acts. Under the MVFRL underinsured motorist coverage is described as designed to "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S.A. § 1731(c). Similar language was used in the Uninsured Motorist Act in describing such coverage as issued "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured

motorist vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." 40 P.S. § 2000.

Further, an intent to provide for stacking of uninsured and underinsured motorist benefits may be evinced under Subchapter C. § 1733 which sets forth the order of priority where multiple policies apply. Although Subchapter C. does not expressly provide for the stacking of underinsured coverage where multiple vehicles are covered under one policy, it does not expressly prohibit such recovery. The only limitation on recovery listed within Subchapter C. requires that "a person who recovers damages under uninsured motorist coverage or coverages cannot recover damages under underinsured motorist coverage or coverages for the same accident." 75 Pa.C.S.A. § 1731(d). There is no provision in Subchapter C. prohibiting the stacking of either uninsured or underinsured coverage. It is important to note that Subchapter B., entitled Motor Vehicle Liability Insurance First Party Benefits, does set forth in § 1717 an express prohibition providing that first party benefits shall *not* be increased by stacking the limits of coverage of "(1) multiple motor vehicles covered under the same policy of insurance; or (2) multiple motor vehicle policies covering the individual for the same loss." 75 Pa.C.S.A. § 1717 (emphasis added) *See: Laguna v. Erie Insurance Group*, 370 Pa.Super. 308, 536 A.2d 419 (1988). No similar limitation is contained within Subchapter C. Since the legislature chose not to include a like provision when enacting Subchapter C., their noninclusion of such a provision must be construed as intentional where there is no other meaning fairly implied from the legislative intent. *Allen v. Erie Insurance Company*, 369 Pa.Super. 6, 11–12, 534 A.2d 839, 841 (1987) *citing Hochgertel v. Canada Dry Corp.*, 409 Pa. 610, 614, 187 A.2d 575, 577 (1963).

Appellant reasons that the Legislature did not expressly prohibit stacking of underinsured motorist coverage in Subchapter C. since prior to the passage of the MVFRL a clear and unambiguous provision disallowing the stacking of underinsured benefits was enforceable. *See: Votedian v.*

*General Accident Fire and Life Assurance Corporation,*
*supra.* Appellee argues that while the courts permitted
insurance companies to enforce clauses which prohibited the
stacking of underinsured motorist coverage, such rulings
were premised on the fact that underinsured motorist cover-
age was not required in this Commonwealth and therefore
the parties were free enter into a contract which made such
limitations. The following language is cited in support of
this position:

> Underinsurance motorist coverage is not the same as
> uninsured motorist coverage. The Uninsured Motorist
> Coverage Act does not require underinsured motorist
> coverage; the statute contains no reference to and does
> not seek to regulate policies which provide underinsured
> motorist coverage.
>
> . . . .
>
> The Legislature has not by statute established a policy
> which compels the writing of underinsured motorist cov-
> erage. An insurance company is wholly free to issue a
> policy of automobile liability insurance which contains no
> protection whatsoever against underinsured motorist ...
> When underinsured motorist coverage is included, the
> terms and limitations thereof are not controlled by stat-
> ute or by public policy but by the agreement reached by
> the parties.

*Id.,* 330 Pa.Superior Ct. at 18–19, 478 A.2d at 1327. (cita-
tions omitted).

Referring to the fact that underinsurance is now mandat-
ed under the MVFRL, 75 Pa.C.S.A. § 1731(a), Appellee
persuasively advances that the fundamental predicate to the
court's earlier decisions upholding the validity of anti-stack-
ing clauses is no longer viable.

Appellant, however, challenges Appellee's reasoning. It
finds a different basis for the courts' previous decisions to
enforce these limitation provisions. It suggests that the
different stacking treatment of uninsured and underinsured
coverage found in prior case law was not based upon the

fact that uninsured coverage was required, while underinsured coverage was not. Instead it submits that under the Uninsured Motorist Act the limits were stacked primarily because no maximum benefit limits were set forth in the Act. The Act only referred to minimum amounts of coverage. Appellant reasons that such a distinction is evident when one examines the different treatment of the stacking question in cases which were decided based upon an interpretation of the Uninsured Motorist Act and the now repealed No–Fault Act.

In *Antanovich v. Allstate Insurance Company,* 507 Pa. 68, 488 A.2d 571 (1985) the Pennsylvania Supreme Court ruled that there was no indication of policy contained within the No–Fault Act which was clear enough to void a clear provision in an insurance contract which precludes stacking work loss benefits. *Id.,* 507 Pa. at 76, 488 A.2d at 575. Appellant posits that since both the Uninsured Motorist Act and the No–Fault Act mandated that coverages be included in insurance policies, the sole distinction for permitting stacking in the former but not in the latter must rest on the fact that the Uninsured Motorist Act did not set forth maximum benefits limits while the No–Fault Act did. Appellant continues by maintaining that the stacking of underinsurance coverage under the MVFRL should be treated as was work loss benefits under the No–Fault Act. It is Appellant's position that the MVFRL sets forth a specific formula for a determination of maximum benefits recoverable under underinsurance coverages. Referring to Sections 1734 and 1736 of the MVFRL, Appellant notes that underinsured motorist benefits cannot exceed the limits of liability for bodily injury. Appellant would therefore conclude that such a limitation would enable an insurer to prohibit stacking by the terms of its policy.

Unlike Appellant we do not read the provisions of Subchapter C. to place a ceiling on the amount of underinsurance a victim may recover. Although an insured may obtain uninsured and underinsured coverages in amounts equal to, but not greater than, the amount of his liability

coverage, there is no restriction on the maximum liability insurance limit that may be written. Thus, it follows there is no restriction on the maximum uninsured or underinsured motorist coverage limits. The rationale for such a feature was recently expressed:

> The legislature has thus prevented an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.

*Wolgemuth v. Harleysvill Mutual Insurance Co., supra,* 370 Pa.Super. at 55, n. 3, 535 A.2d at 1147, n. 3.

Accordingly, this argument presented by Appellant must be dismissed.

In conclusion we find the rationale utilized by the courts in *Harleysville Mutual Casualty Co. v. Blumling* and the cases which follow it in interpreting the Uninsured Motorist Act to provide a liberal compensatory scheme, applies with equal force to our interpretation of the MVFRL. We hold that on the facts of this case underinsurance coverage may be stacked to compensate Appellee to the extent of damages. The limitation on stacking contained in the instant policy which would provide otherwise is void as repugnant to and in derogation of the purpose and policy of the MVFRL.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is hereby ordered and adjudged by this Court that the Judgment of the Court of Common Pleas of Lycoming County is affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

Because I believe that the majority confuses, and attempts to equate, "public policy" with "legislative intent", I must dissent.

I agree with the majority that in this case, the provisions of the insurance contract under review are clear and unam-

biguous. I disagree that we, as an intermediate appellate court, are free to declare the contract provisions void upon a finding that they are "repugnant to the policy underlying the [Motor Vehicle Financial Responsibility Law] MVFRL."

Public policy should be taken to mean a principle under which freedom of contract or private dealings is restricted by law for the good of the community. Thus, a clause in an insurance policy might be found to be against public policy if its implementation might have a mischievous tendency, so as to be injurious to the interests of the state, apart from illegality or immorality. *See* Black's Law Dictionary 1041 (5th ed. 1979).

Legislative intent, however, refers to the state of mind or mental attitude present within the legislature at the point in time when a specific act secures passage. It should be looked to only when we are called upon to construe a statute which is ambiguous or inconsistent.

I do not read the majority opinion to suggest that a clause prohibiting stacking of underinsurance coverage within a single policy is in any way mischievous or injurious to the interests of the state. Indeed, it could not, since we have found such clauses to be entirely legal in the past. *Votedian v. General Accident Fire and Life Assurance Corporation*, 330 Pa.Super. 13, 478 A.2d 1324 (1984); *Vogel v. National Grange Mutual Insurance Company*, 332 Pa.Super. 384, 481 A.2d 668 (1984). *See also, Haegele v. Pa. General Insurance Company*, 330 Pa.Super. 481, 479 A.2d 1005 (1984).

Rather, the majority, seemingly, has examined the arguments presented by the parties and considered various sections of the MVFRL in order to determine what the legislature *might* have done, if they had considered stacking in direct relation to underinsurance coverage. I find this approach to be nothing more than our court attempting to engage in the legislative process. I decline to join in such an escapade.

I do not find the Motor Vehicle Financial Responsibility Law to be either ambiguous or inconsistent on the issue presented in this appeal. On the contrary, the legislature

has quite clearly spelled out an insured's right to select a maximum amount of underinsurance coverage desired beyond the statutorily required minimum. 75 Pa.C.S. § 1734. The minimum limit for bodily injury financial responsibility is $15,000 because of injury to one person in any one accident and $30,000 because of injury to two or more persons in any one accident. 75 Pa.C.S. § 1702. In the case before us, the insured secured $35,000 of underinsured motorist coverage, while securing $100,000 of bodily injury liability coverage. This, to me, is a clear case of the insured exercising his rights under Subchapter C of the MVFRL, §§ 1731 and 1734.

Even if I were to accept the majority's premise that one may look to the intention of the legislature in order to fill in the interstices of the act where no ambiguity or inconsistency exists, I would conclude that there is no indication of policy within the MVFRL clear enough to void a plain, unambiguous provision in an insurance contract precluding stacking of underinsurance benefits. *Cf. Antanovich v. Allstate Insurance Company*, 320 Pa.Super. 322, 467 A.2d 345 (1983), *aff'd*, 507 Pa. 68, 488 A.2d 571 (1985).

I would take issue with this court's attempt to use *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968) as the springboard for its analysis based on legislative intent. In *Blumling*, our supreme court was faced with an insured who held two distinct policies of insurance, each containing uninsured motorist coverage. In ruling that the "other insurance" clause was invalid, the court was not required to examine, compare and contrast the various clauses of the Uninsured Motorist Act,[1] but could rest on the fact that the Act mandated coverage. Were the "other insurance" clauses in both policies to be given effect, an insured could have ended up with *no* coverage, a result that clearly would have offended the public policy as expressed in the Act. Moreover, the "other insurance" clause was being used to limit the carrier's liability in the face of a statute mandating a fixed amount of coverage.

1. Act of August 14, 1963, P.L. 909; 40 P.S. § 2000.

I am puzzled by the majority's assertion, without citation to authority, that the failure of the legislature to include an express limitation regarding stacking in Subchapter C of the MVFRL "lends credence" to the insured's contention that the legislature (1) intended the stacking of uninsured benefits to continue and, by joining uninsured and underinsured benefits within the same subchapter, (2) intended to permit the stacking of underinsured benefits. I find this to be nothing more than mere speculation, in no way supported by any rules of statutory construction with which I am familiar.

The majority concludes that the limitation on stacking is void as repugnant to and in derogation of the purpose and policy of the MVFRL. If that purpose and policy as found by the majority is nothing more than the provision of a "liberal compensatory scheme," I find such a policy not clear enough to void the plain, unambiguous provision in the insurance contract before us.

There is nothing to suggest that our past attempts to assist the legislature in amending the now-defunct No-fault Act proved beneficial to the Commonwealth. I would prefer to leave the amendment of the MVFRL in the capable hands of our representatives in Harrisburg. Hence this dissent.