MARYLAND CASUALTY
COMPANY, Plaintiff

v.

Lee Albert FITZE, Defendant.

No. 3:CV–90–0890.

United States District Court,
M.D. Pennsylvania.

Aug. 31, 1990.

Lucille Marsh, Kreder, O'Connell, Brooks & Hailstone, Scranton, Pa., for plaintiff.

Cal Leventhal, Dougherty, Mundy, Leventhal & Price, Kingston, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, Chief Judge.

This is a declaratory judgment action initiated by the Maryland Casualty Company in which the terms and provisions of an automobile insurance policy are in dispute. The issue presented to the court is whether the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Con.Stat.Ann. §§ 1701 *et seq.* (hereinafter "MVFRL"), allows an insured to "stack" his underinsured motorist coverage in excess of his liability coverage. We find that it is permissible and judgment will be entered in favor of the Defendant, Lee Albert Fitze, and against the Plaintiff.

I

Plaintiff filed its complaint on May 8, 1990, and served the initial pleading within the 120 day period as required by FRCP 4(j). A Practice Order was then issued setting July 1, 1990, as the date for filing of motions to dismiss or for summary judgment. On May 24, 1990, the Defendant filed his answer to the complaint. Cross motions for summary judgment were filed by the Plaintiff and Defendant on June 26, 1990 and July 11, 1990, respectively. The dispositive motions have been fully briefed and are now ripe for our consideration.

II

The parties to this action agree that the relevant facts of this case are undisputed. Specifically, on December 30, 1988, Lee Albert Fitze was injured in an automobile accident. The negligent party who caused the accident was covered by an insurance policy for personal liability in the amount of $100,000.00. That policy amount has now been exhausted and Defendant Fitze wishes to recover on his own policy's underinsured motorist protection.

The disputed policy, issued by the Maryland Casualty Company, covers two vehicles and affords bodily injury liability insurance in a single limit of $100,000.00 and uninsured motorist/underinsured motorist benefits in the same amount. The Defendant is seeking to stack his underinsured motorist benefits on each of the two vehicles for a total of $200,000.00 of available benefits and cites as his authority the case of *North River Insurance Co. v. Tabor*, 744 F.Supp. 625 (M.D.Pa.1990), *appeal docketed*, Civ. No. 90–5709 (3d Cir. August 9, 1990).

On the other hand, the Plaintiff asserts that Fitze is not entitled to stack by virtue of Section 1736 of the Motor Vehicle Financial Responsibility Law of Pennsylvania, codified at 75 Pa.C.S.A. § 1736. In support

of this proposition, the Plaintiff cites the recent decision of Judge Waldman in *Chartan v. Chubb Corp.*, 725 F.Supp. 849 (E.D. Pa.1989).

## III

In order for a moving party to prevail on a motion for summary judgment, the party must first show that there is no genuine issue as to any material fact. Once that is demonstrated, the movant must establish he or she is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); 7 Wright & Miller, *Federal Practice and Procedure;* Civil Section 2712.

As to the first matter, the substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d. 202 (1986). In this case, the parties agree that Defendant Fitze has an automobile insurance policy with the Maryland Casualty Company and that he is entitled to under-insured motorist benefits. The dispute, however, occurs in the interpretation as to the extent of coverage. The courts have held that such issues as policy limits which relate to the interpretation of an insurance policy, as well as related statutory provisions applicable to those policies, have been held to be issues properly left to legal determination. *See Chartan, supra* at 851 citing *Myers v. State Farm Insurance Co.*, 842 F.2d 705, 708 (3d Cir. 1988); *Tabor, supra.* Consequently, since no material facts are in dispute and a purely legal question has been presented, this matter is appropriate for resolution under Fed.R.Civ.P. 56.

## IV

Whether an individual can use the concept of stacking to augment the amount recoverable in a policy is not in dispute. Both sides agree that stacking is allowable under Pennsylvania's Motor Vehicle Financial Responsibility Law. The issue that must be addressed here, however, is whether there are maximum limits on stacking of uninsured and underinsured motorist coverage. There are no state court decisions directly on point, but two federal cases have addressed the issue.

In *Chartan v. Chubb Corp.*, 725 F.Supp. 849 (E.D.Pa.1989), Judge Jay C. Waldman held that permitting individuals to stack uninsured or underinsured motorist coverage beyond that of liability coverage would be inconsistent with MVFRL and the purpose behind its provisions. The court came to this conclusion based on three factors: (1) the statutory language of the Act; (2) what the court perceived to be the legislative intent of the Pennsylvania General Assembly; and (3) recent state court decisions in *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988) (en banc) and *Tallman v. Aetna Casualty and Surety Co.*, 372 Pa.Super. 593, 539 A.2d 1354 (1988), *appeal denied*, 520 Pa. 607, 553 A.2d 969 (1988).

Beginning with the language of the statute, the *Chartan* court looked to Subchapter C of MVFRL dealing with uninsured and underinsured motorist coverage. *See* 75 Pa.Cons.Stat.Ann. §§ 1731–1736. The relevant statutory language, in effect at the time of Defendant Fitze's accident, provides as follows:

§ 1736. **Coverage in excess of required amounts**

The coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

Interpreting this section, Judge Waldman found that the stated value of a policy's uninsured and underinsured motorist coverage can not be greater than the policy's limits on liability, and also that stacking of these benefits beyond the stated limits of liability was impressible. Specifically, the court stated:

Permitting individuals to stack uninsured or underinsured motorist coverage beyond that of liability coverage would be inconsistent with § 1736 and undermine the purpose behind it. The legislative intent in enacting § 1736 was to "prevent the new insurance system from

degenerating into a purely first-party insurance system, where each driver [was] insured against his or her own loss, but no driver insure[d] against the damage he or she may do to others." J. Ronca, L. Sloan & J. Mundy, *An Analysis of the Financial Responsibility Law* 104, § 6:11 (1986). As the Pennsylvania Superior Court recently noted in discussing this section:

> The legislature has thus prevented an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.

*Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 55 n. 3, 535 A.2d 1145 (1988) (en banc).

> Acceptance of plaintiff's argument would permit individuals effectively to orchestrate coverage to provide adequately for their own loss but not that of potential victims of their negligence ... The legislature reasonably could not have intended to permit by means of stacking what it forbade by means of purchasing coverage directly.

*Chartan, supra* at 853.

Eight months later, in *North River Insurance Co. v. Tabor*, 744 F.Supp. 625 (M.D.Pa.1990), *appeal docketed,* Civ. No. 90–5709 (3d Cir. August 9, 1990), Judge Sylvia H. Rambo came to the opposite conclusion. Finding a strong legislative policy favoring the concept of stacking and support for that interpretation through a series of state court decisions, Judge Rambo determined that § 1736 was not meant to limit the maximum amount of recovery by an insured when stacking uninsured and underinsured benefits.

The *Tabor* opinion, relying strongly on prior case law favoring the general concept of stacking, followed what it perceived to be the intent of the legislature to allow unlimited stacking. In reaching this conclusion, the *Tabor* court looked more at what was omitted in Subchapter C rather than the actual language of provisions found there. Specifically, the court noted that under Section 1717 of the statute, the legislature expressly forbid the concept of stacking for liability coverage of first party benefits. The exact wording of the provision, as contained under Subchapter B covering liability insurance, provides the following:

### § 1717. Stacking of benefits

First party benefits shall not be increased by stacking the limits of coverage of:

(1) multiple motor vehicles covered under the same policy of insurance; or

(2) multiple motor vehicles policies covering the individual for the same loss.

Since a similar condition is not contained under Subchapter C concerning uninsured and underinsured motor vehicle coverage, Judge Rambo concluded "that the legislature did not intend to preclude stacking of underinsured coverage." *Tabor, supra* at 626.

Continuing on, the *Tabor* court cites several state court decisions favoring the concept of stacking. *Tabor* at 627 citing *State Farm Mut. Auto. Ins. Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978); *Tallman v. Aetna Casualty & Sur. Co.,* 372 Pa.Super. 593, 539 A.2d 1354, *appeal denied,* 520 Pa. 607, 553 A.2d 969 (1988); *Sones v. Aetna Casualty and Sur. Co.,* 270 Pa.Super. 330, 411 A.2d 552 (1979). A reading of these cases provides the justification for stacking, which is aptly recounted in *Tallman, supra:*

> [F]irst, ... it furthers the policies sought to be accomplished by the act; and second, that the intended beneficiary of an uninsured motorist policy is entitled to multiple coverage when multiple premiums have been paid. The latter rationale is grounded in the belief that a person has reasonable expectations when he pays separate premiums that he has obtained coverage under separate policies, and therefore is entitled to benefits under each.

*Id.* 539 A.2d at 1356, quoting *Utica Mutual Insurance Company v. Contrisciane,* 504 Pa. 328, 338, 473 A.2d 1005, 1010 (1984).

Finally, Judge Rambo concludes her reasoning in support of unlimited stacking of uninsured and underinsured coverage by citing a new provision recently enacted by the state legislature. Section 1738, which became effective July 1, 1990, provides, in relevant part:

**§ 1738. Stacking of uninsured and underinsured benefits and options to waive**

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacking limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

1990 Pa. Legis. Serv. 23 (Purdon) (Act No. 1990–6). Based on this newly enacted provision, the *Tabor* court believes that the legislative intent is "borne out" to allow stacking of uninsured and underinsured benefits in excess of the maximum recoverable amount under first party liability coverage. *Tabor* at 627.

### V

An analysis of both the *Chartan* and *Tabor* decisions, and the state court precedents which they cite, leads to the conclusion that the use of stacking of uninsured and underinsured coverage is permissible. In laying the foundation to justify its reasons not to limit recovery under stacking, the *Tabor* court found:

The Pennsylvania legislature's intent on the issue of stacking can be determined from several sources. First, while the legislature specifically excluded the stacking of first party benefits in Section 1717 of the MVFRL, 75 Pa.Cons.Stat. Ann. § 1717 (Purdon Cum.Supp.1990), it made no such provision in the uninsured/underinsured provisions of the act. One can conclude, therefore, that the legislature did not intend to preclude stacking of underinsured coverage.

*Tabor* at 626. The *Chartan* court would agree with the basic premise that stacking is allowable under Subchapter C for uninsured and underinsured benefits although it would not be allowed for liability coverage under Subchapter B. *Chartan* at 553 citing *Tallman v. Aetna Casualty and Surety Co.*, 372 Pa.Super. 593, 539 A.2d 1354 (1988), *appeal denied*, 520 Pa. 607, 553 A.2d 969 (1988). The *Chartan* court goes on, however, to concluded that a further extension of this argument to justify *unlimited* stacking under Subchapter C would be inappropriate. To that end, Judge Waldman explained:

Finally, plaintiff argues that, because § 1717 of the statute expressly forbids stacking of first party benefits, and because no such provision appears in Subchapter C, the legislature intended to permit stacking of uninsured benefits in excess of liability coverage. (footnote omitted) While the premises of plaintiff's argument are valid, her conclusion is not sound. *Tallman* established the right to stack coverage under Subchapter C in those instances where an insured has made an election pursuant to § 1734. Section 1736, however, reflects a clear decision by the General Assembly to limit the extent to which such coverage may be stacked. In short, one would not expect to find a provision parallelling that of § 1717 in Subchapter C for the simple

reasons that § 1717 bars stacking entirely while Subchapter C does not.

*Chartan* at 854.

Moreover, the *Chartan* court emphasized that Section 1736 of MVFRL provides that uninsured and underinsured coverage "may not be greater than the limits of liability specified in the bodily injury provisions of the insured's policy." Though Section 1736 does not mention the term "stacking", the *Chartan* court concluded that "[t]he legislature reasonably could not have intended to permit by means of stacking what it forbade by means of purchasing coverage directly." *Chartan* at 853.

The court in *Tabor*, however, disagrees with this conclusion and makes a strong argument based on the legislative intent surrounding the newly enacted provisions of MVFRL. Although the new provisions would not apply to the Defendant's policy, the court apparently used the new enactment based on the rule of statutory construction that the General Assembly is presumed to be familiar with the law as it then existed when it enacts new legislation. *Tabor* at 626; 1 Pa.Cons.Stat.Ann. § 1921(c)(5) (Purdon Cum.Supp.1990).

Judge Rambo appears to argue that the new provisions serve to clarify, not correct, any deficiencies concerning stacking provisions for uninsured and underinsured benefits. The new law now provides an opportunity for an insured to utilize stacking or waive its provisions. 75 Pa.Cons.Stat.Ann. § 1738. If an insured chooses to have a stacking option, the limits of coverage "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." *Id.* at § 1738(a). If an insured chooses to waive the ability to stack coverage, they are entitled to a reduced premium to reflect the different cost of such coverage and their benefits would be restricted to "the stated limits for the motor vehicle as to which the injured person is an insured." *Id.* at § 1738(b) and (c). The terms of Section 1736, to which the *Chartan* court relied to limit stacking coverage, was left untouched by the legislature.

Be that as it may, Judge Rambo argues that in light of this new provision, the legislative intent not to limit stacking of uninsured and underinsured benefits in relation to liability coverage is "borne out". We agree.

The mischief sought to be curb by enacting § 1736 was to prohibit persons from securing greater coverage for themselves at the expense of the general public. By requiring minimum coverage levels and limiting the stated policy value of uninsured and underinsured coverage, the legislature sought to have all motorists financially responsible for injuries incurred by or to them in a motor vehicle accident.

In allowing stacking, however, the legislature also recognized that an unwary consumer in the often confusing insurance marketplace should have a reasonable expectation to receive what he or she believes was purchased in terms of coverage. For this is not a case in which the Defendant was acting irresponsibly in securing coverage. Rather, Fitze obtained liability coverage in the amount of $100,000.00, far in excess of the $15,000.00 required by law. He also secured $100,000.00 as to each of the two vehicles he owned for uninsured and underinsured coverage. To allow the Defendant to recover in excess of his liability coverage would not, in this court's opinion, defeat the purpose of the Act in requiring a motorist to be financially responsible for any injuries suffered or caused by his or her negligence.

The intended beneficiary of an underinsured motorist policy is entitled to multiple coverage when a higher premium has been paid. The legislature recognized this when enacting the new provisions of MVFRL by requiring a reduction in premiums where stacking is waived. For not only should the law promote a source of fiscal security to assist a faultless and injured victim of an automobile accident, but also, it should provide for consumer protection to the millions of policyholders in a habitually vague and unfamiliar realm dominated by the insurance industry.

If the legislature intends to place limits on stacking of uninsured and underinsured

benefits, it has the authority to explicitly do so. Until that time, this court will not read into the law a restrictive provision which would, as in this case, cause harm to an injured victim who acted responsibly when securing coverage for his own liability as well as providing protection for himself. We acknowledge that the limitations under § 1736 still exists, but we believe a literal reading of the statute is required which would narrowly limit its application to the stated policy limits on the face of the insurance contract until the legislature expressly provides otherwise.

Accordingly, an appropriate order is attached.

### ORDER

AND NOW, this 31st day of August, 1990, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment is DENIED.

2. Defendant's motion for summary judgment is GRANTED.

3. Judgment is herein entered in favor of the Defendant, Lee Albert Fitze, and against the Plaintiff, Maryland Casualty Company.

4. The Clerk of Court is directed to close this file.