**METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY, Appellant,**

v.

**Phyllis A. STREETS, as Administratrix of the Estate of Martin Streets, Deceased.**

No. 88–1045.

United States Court of Appeals, Third Circuit.

Argued June 22, 1988.

Decided Aug. 31, 1988.

* Hon. Jane R. Roth, United States District Judge for the District of Delaware, sitting by designation.

1. There is pending in the Court of Common Pleas of Philadelphia a petition by Mrs. Streets for the appointment of an arbitrator on her claim against Metropolitan. That petition, we are advised, has been stayed pending the resolution of this federal court declaratory judgment action.

Duane, Morris & Heckscher, Cecelia F. Wambold (argued), Claudia H. Wohlfarth, Philadelphia, Pa., for appellant.

Kleeman & Abloeser, P.C., Samuel Abloeser (argued), Michael Y. Kleeman, Philadelphia, Pa., for appellee.

Before GIBBONS, Chief Judge, HIGGINBOTHAM, Circuit Judge, and ROTH, District Judge *.

OPINION OF THE COURT

GIBBONS, Chief Judge:

Metropolitan Property and Liability Insurance Company appeals from an order dismissing its complaint for declaratory and injunctive relief against Phyllis A. Streets, administratrix of the estate of Martin Streets, with respect to Mrs. Streets' claim for uninsured motorist benefits for Martin, her deceased son. Metropolitan sought a declaration (1) that the residency requirements of the policy were not met at the time of the accident, and (2) that the limits of liability on the policy, if residency requirements were met, are $15,000 per person and $30,000 per accident. In Mrs. Streets' claim, she contended that the residency requirements were satisfied, and that the limit of liability is $300,000. She moved pursuant to Fed.R.Civ.P. 12(b) to dismiss Metropolitan's complaint on the ground that a policy provision required arbitration of both claims.[1] The district court judge to which the case was assigned held that both disputed issues were arbitrable, and dismissed the complaint. Other judges in the Eastern District of Pennsylvania, dealing with identical arbitration clauses in Metropolitan's automobile insurance policies, have reached the opposite conclusion.[2] We conclude that the court erred in holding that the dispute over policy limits and resi-

2. *Berryman v. Metropolitan Property and Liability Ins. Co.,* No. 88–1895 (E.D.Pa. June 24, 1988) (limits of coverage not arbitrable) [available on WESTLAW, 1988 WL 102640]; *Metropolitan Property and Liability Ins. Co. v. Tropiano,* No. 87–5993 (E.D.Pa. Feb. 10, 1988) (same); *Metropolitan Property and Liability Ins. Co. v. Malinowski,* 695 F.Supp. 175 (E.D.Pa. Feb. 9, 1988).

dency are arbitrable, and remand for a judicial resolution of those issues.

## I

Martin Streets was fatally injured on March 26, 1985 when a motorcycle on which he was a passenger collided with a motor vehicle. Mrs. Streets claims that neither vehicle and neither driver was insured. At the time of the accident Mrs. Streets was insured under a Metropolitan policy containing an uninsured motorist endorsement as follows:

> We will pay bodily injury damages, caused by an accident, which you and any relative are legally entitled to collect from the owner or driver of ... an uninsured highway vehicle.... The amount of damages we will pay is subject to the provisions of our limits of liability.

The term "relative" is defined in the policy as follows:

> "Relative" means, if resident in the same household as the named insured:
>
> (b) any person related to the named insured by blood, marriage or adoption, including a minor in custody of the named insured, spouse or such related person, whether or not temporarily residing elsewhere.

Martin Streets is Mrs. Streets' son. Metropolitan claims, however, that at the time of the accident he was not a minor in her custody and was not a resident of the same household with her.

The coverage sheet of the policy issued to Mrs. Streets reflects the minimum uninsured motorist policy limits permitted under the Pennsylvania Motor Vehicle Responsibility Law: $15,000 per person and $30,000 per accident. The policy was a renewal policy, and she paid her renewal premium for the relevant policy period. The original policy contained a $300,000 limit for liability coverage and $15,000/$30,000 in uninsured motorist coverage. The renewal policy had identical limits. Mrs. Streets contends, however, that because of sections 1731 and 1734 of the Pennsylvania Motor Vehicle Financial Responsibility Act, which were enacted about one month after her original policy was issued, Metropolitan was obliged to unilaterally increase her uninsured motorist coverage to an amount equal to her liability coverage.[3] Metropolitan, on the other hand, insists that Mrs. Streets was required to give notice of her desire for higher uninsured motorist limits because Metropolitan gave the notice required by section 1791 of the Financial Responsibility law.[4]

---

3. The sections on which she relies provide:
   Scope and amount of coverage
   a). General rule.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in Section 1734 (relating to request for lower or higher limits of coverage).
   75 Pa.Cons.Stat.Ann. § 1731 (Purdon Supp. 1988).
   Request for lower or higher limits of coverage
   A named insured may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury. *If the named insured has selected uninsured and underinsured motorist coverage in connection with a policy previously issued to him by the same insurer under section 1731,* the coverages offered need not be provided in excess of the limits of liability previously issued for uninsured and underinsured motorist coverage unless the named insured requests in writing higher limits of liability for those coverages.
   75 Pa.Cons.Stat.Ann. § 1734 (Purdon Supp.1988) (emphasis added).

4. Section 1791 in relevant part provides:
   It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage or at the time of the first renewal after October 1, 1984 and *no other notice or rejection shall be required:*

   IMPORTANT NOTICE

   ... Your signature on this notice or your payment of any renewal premium evidences your *actual knowledge and understanding of* the availability of these benefits and limits as well as *the benefits and limits you have selected.*
   75 Pa.Cons.Stat.Ann. § 1791 (Purdon Supp.1988) (emphasis added).

The arbitration clause in the Metropolitan policy provides:

> Whether any person is legally entitled to collect damages and the amount to which such person is entitled, will be determined by agreement between that person and us. Upon written request of either party any disagreement will be settled by arbitration, in accordance with the provisions of the Pennsylvania Uniform Arbitration Act of 1927.

The "Coverage Provided" section of the uninsured motorist coverage endorsement to the policy states that "[t]he amount of damages [Metropolitan] will pay is subject to the provisions of our limits of liability." Mrs. Streets contends that the arbitration clause includes both disputes over the identity of the insured (the residency issue) and over the limits of coverage. Metropolitan, on the other hand, insists that the arbitration clause covers only disputes over entitlement to damages from an uninsured driver and over the amount of such damages. The trial court accepted Mrs. Streets' reading of the arbitration clause, and dismissed Metropolitan's complaint.

## II

The parties agree that our review of the district court's construction of the contract is plenary. *See Penwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 79 (3d Cir.1982); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980). They also agree that the law governing that construction is that of Pennsylvania. Under that law, arbitrability depends upon the intention of the contracting parties as expressed in the chosen language. *E.g., Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 663, 331 A.2d 184, 185 (1975); *LaCourse v. Firemen's Ins. Co. of Newark, N.J.*, 756 F.2d 10, 14 (3d Cir.1985).

Mrs. Streets urges that because the arbitration clause is in an insurance policy, any ambiguity in its language should be construed against the insured. That undoubtedly is the Pennsylvania rule of construction when the dispute is over policy coverage. *See, e.g., Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983); *Miller v. Prudential Ins. Co. of Amer.*, 239 Pa.Super. 467, 472, 362 A.2d 1017, 1020 (1976). Mrs. Streets has not referred us, however, to any Pennsylvania cases suggesting that the same rule should apply to a forum selection clause calling for arbitration rather than litigation. The ambiguity rule prevents the insurer from gaining a substantive advantage from the ambiguity of language it has drafted. It is not immediately apparent why any substantive advantage would result from choice of a forum. Indeed, depending on the nature of the dispute or the predilections of counsel, one insured might prefer arbitration while another might prefer a jury trial. Application of the ambiguity rule would convert an "either party" forum selection clause into one in which only the insured could exercise the choice of forum. We need not decide, however, whether the Pennsylvania courts would apply the ambiguity rule to a forum selection clause in an insurance policy, because we do not perceive any ambiguity.

This court was presented with a similar issue of Pennsylvania contract construction in *LaCourse v. Firemen's Ins. Co. of Newark*, 756 F.2d 10 (3d Cir.1985). There the arbitration clause provided that "if we and an insured disagree[ ] whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or we do not agree as to the amount of damages, either party may make a written demand for arbitration." The dispute in *LaCourse* was over stacking of uninsured motorist coverage when the policy covered more than one motor vehicle. Thus, as in this case, the dispute was over the amount of insurance coverage. We held:

> Using the ordinary meaning of the words at issue here, the resolution of the issue is not complex. The policy requires arbitration when the parties "do not agree on the amount of damages." In this case, the amount of damages is the monetary loss sustained by the estate of the decedent and his family under appropriate principles of state law. That amount is not measured by or restricted in any way

by the policy limits. It is a factual matter completely independent of the actual amount of insurance provided by the policy.

756 F.2d at 14.

Unless *LaCourse* has been undermined by subsequent developments, its construction of virtually identical language is controlling with respect to the dispute over limits of coverage, for there is no distinction, for purposes of arbitration, between limits of coverage arrived at by interpreting the Pennsylvania law on stacking and limits of coverage arrived at by application of the Pennsylvania renewal statute. The dispute over residence presents a slightly different question, however, since the stacking and renewal issues both present issues of law, while the residence issue is primarily one of fact. The reasoning of the *LaCourse* opinion, however, is equally applicable to both issues. As the *LaCourse* opinion points out, the arbitration clause covers specified factual disputes over entitlement to collect damages from the uninsured motorist, and the amount thereof. Whether or not the estate of Martin Streets can recover such damages, and the amount thereof, are factual issues entirely distinct from the question whether Martin Streets is an insured under the Metropolitan policy; as distinct, indeed, as a dispute over whether the policy was issued to Mrs. Roads rather than to Mrs. Streets. Under *LaCourse*, the Metropolitan arbitration clause cannot reasonably be construed to cover disputes over the identity of the insured any more than it can be construed to cover disputes over the amount of coverage.

We acknowledge that there is some tension between *LaCourse* and *Ostroff v. Keystone Ins. Co.*, 301 Pa.Super. 73, 446 A.2d 1341 (1982) (per curiam) (*Ostroff I*), *appeal after remand*, 357 Pa.Super. 109, 515 A.2d 584 (1986) (in banc) (*Ostroff II*), *allocatur denied*, 515 Pa. 582, 527 A.2d 542 (1987). In *Ostroff I*, the Superior Court of Pennsylvania held that an arbitration provision virtually identical to the ones involved here and in *LaCourse* required arbitration of the question whether the policy provided underinsured coverage. Although the per curiam opinion did not recite the language of the arbitration provision, the opinion was available to the *LaCourse* panel. Therefore, *Ostroff I* does not loosen the binding force of *LaCourse* on this panel. In *Ostroff II*, the court vacated the arbitration award since the arbitration had been tried on a totally different theory than the one on which arbitration had been ordered. Its description of the holding in *Ostroff I*, although more detailed than the original per curiam opinion itself, is dicta. We thus remain bound by *LaCourse*.

### III

We conclude, therefore, that the order dismissing the complaint must be reversed. The case will be remanded for resolution by the district court of the residency and coverage issues.