## Hepler v. Liberty Mutual Fire Insurance Co.

*Richard C. Angino,* for plaintiffs.
*Thomas Williams,* for defendant.

HESS, *J.,* March 2, 1989 — The complaint in this case alleges that plaintiff, Diane E. Hepler, was seriously injured in an automobile accident on May 19, 1988. Having been hospitalized since that date, her accident-related medical expenses exceed $100,000. This sum constitutes the limits of liability of the tort-feasor in the accident, who was insured by Allstate. Because of this disparity, plaintiffs have undertaken this lawsuit seeking to recover under-insurance benefits.

According to plaintiffs, they are entitled to under-

insurance coverage from Liberty Mutual Fire Insurance Company in an amount equal to the bodily injury liability coverage under their policy with defendant. Defendant has denied underinsurance coverage in the amounts claimed, instead citing the policy which purports to limit their liability to $15,000 per person and $30,000 per accident. The bodily injury liability coverage, under the Liberty Mutual Policy, is $100,000 and $300,000 respectively.

Before us are preliminary objections of defendant. They recite: First, that plaintiffs are not entitled to a reformation of their insurance policy raising the uninsured motorist's limits specified therein; second, while the policy contains a clause permitting arbitration, we must, as a matter of law, refuse plaintiffs' request to compel defendant to participate in such arbitration: third, that, as a matter of law, plaintiffs are not entitled to have the policy reformed so as to permit the stacking of underinsured motorist coverage provided for therein; and, finally, that because the underinsured motorist limits are less than the amount already recovered, plaintiffs are not entitled to any underinsured motorist benefits, as a matter of law. We deal with these matters seriatim.

In a cover sheet to the Heplers' insurance policy, uninsured motorist coverage is described as "15/30." In obtaining the Liberty Mutual Policy plaintiffs, in an application signed by Mr. Hepler, purportedly requested uninsured and underinsured motorist coverage by checking the block marked "$15,000/$30,000 (basic)." Notwithstanding, plaintiffs believe that they are entitled to underinsurance coverage in an amount equal to the liability coverage, or $300,000 per insured vehicle.

The Financial Responsibility Law requires that all motor vehicle liability insurance policies issued in

Pennsylvania contain underinsured motorist coverage in an amount equal to liability coverage. 75 Pa.C.S. §1731(a). Notwithstanding, a named insured may request, in writing, limits that are less than that. 75 Pa.C.S. §1734. Defendant contends that Mr. Hepler's signature on the application for insurance constitutes a request for lower limits of underinsurance coverage because Liberty Mutual complied with all notice requirements of the group Motor Vehicle Financial Responsibility Law. Section 1791 of the law provides the form of the notice and states:

"§1791. Notice of available benefits and limits —

"It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least 10-point type is given to the applicant at the time of application for original coverage or at the time of the first renewal after October 1, 1984, and no other notice or rejection shall be required:

### *"Important Notice"*

"Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

"(1) Medical benefits, up to at least $100,000 . . .

"(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the

insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident. Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above. Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected."

The question then presents itself whether, under the statute, plaintiff's signature under the foregoing notice constitutes a request, in writing, under section 1734, for coverage in amounts less than the limits of liability for bodily injury. A recent holding of the U.S. Court of Appeals for the Third Circuit is to the effect that an insured's signature to a waiver in the form of that prescribed in section 1791 of the Financial Responsibility Law is sufficient to bind the policyholder to the level of uninsured motorist coverage which was selected. *Prudential Property and Casualty Insurance Co. v. Pendleton,* 858 F.2d 930 (3d Cir. 1988).

In this particular case, however, the section 1791 waiver was signed only by Michael H. Hepler and not by Diane E. Hepler, the latter having suffered the physical injury. In the policy attached to the complaint and marked "Exhibit A," Mrs. Hepler is a "named insured." Her status, therefore, according to the policy itself is equal to that of her husband, Michael Hepler. The definition section of the insurance policy does, indeed, refer to persons other than the "named insured" implying that the named insured has entered into a contract of insurance on

behalf of the "spouse if a resident of the same household" or a "family member" which is defined as a person related to the insured, by blood, marriage or adoption who is a resident of the insured's household. If the policy had relegated Mrs. Hepler to the status of "spouse" or "family member," then we have no question that Mr. Hepler's signature, alone, would have sufficed to reduce the underinsurance benefits, payable under the policy, to $15,000/$30,000. In this case, Mrs. Hepler is, as we have said, a named insured. By all agreement, her signature does not appear on the waiver. Therefore, we can only conclude that the provisions of the policy, lowering the underinsured motorist coverage below that of the bodily injury liability coverage, is not effective as to Mrs. Hepler.

We turn now to the question of whether or not to sustain defendant's preliminary objection to plaintiff's request that we require submission of this matter to arbitration. Speaking to the matter of the arbitration of underinsurance claims the policy states, in part C:

### "Arbitration"

"(A) If we and the insured do not agree:

"(1) Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or

"(2) As to the amount of damages; then the matter may be arbitrated. However, both parties must agree to arbitration."

Defendant does not agree to arbitrate. In addition, defendant contends that the subject matter of this lawsuit, namely the limits of underinsurance liability, is not a proper subject matter for arbitration

according to the language of the policy. Because we agree with defendant's latter contention, we need not address the arguments of plaintiff that a provision, requiring both parties to agree on arbitration, is unconscionable and contrary to public policy. The question, in this case, is whether the issues raised in this lawsuit, concerning the limits of underinsurance liability and stacking, are encompassed in the policy's language concerning arbitration. In holding that such questions were subject to judicial resolution, but not arbitration, the court in *Metropolitan Property and Liability v. Streets*, 856 F.2d 526 (3d Cir. 1988) noted:

"This court was presented with a similar issue of Pennsylvania contract construction in *LaCourse v. Firemen's Ins. Co. of Newark*, 756 F.2d 10 (3d Cir. 1985). There the arbitration clause provided that 'if we and an insured disagree [  ] whether the insured is legally entitled to recover damages from the owner or driver of an uninsured motor vehicle or we do not agree as to the amount of damages, either party may make a written demand for arbitration.' The dispute in *LaCourse* was over stacking of uninsured motorist coverage when the policy covered more than one motor vehicle. Thus, as in this case, the dispute was over the amount of insurance coverage. We held:

" 'Using the ordinary meaning of the words at issue here, the resolution of the issue is not complex. The policy requires arbitration when the parties "do not agree on the amount of damages." In this case, the amount of damages is the monetary loss sustained by the estate of the decedent and his family under appropriate principles of state law. That amount is not measured by or restricted in any way by the policy limits. It is a factual matter completely independent of the actual amount of

insurance provided by the policy.' 756 F.2d at 14."
*Metropolitan Property and Liability v. Streets, supra* at 528-9.

This case also involves a question of policy limits rather than the "amount of damages." Thus, we agree with defendant that the issues of this lawsuit are not included in the insurance policy provisions regarding arbitration. We, therefore, sustain defendant's preliminary objection to plaintiff's arbitration request.

Defendant's third preliminary objection asserts that, as a matter of law, plaintiffs are not entitled to a reformation of the insurance policy permitting the stacking of underinsured motorist coverage. Reformation is required because the subject policy prohibits stacking. On April 6, 1988, the Superior Court held, in *Tallman v. Aetna Casualty and Surety Co.,* 372 Pa. Super. 593, 539 A.2d 1354 (1988) that the anti-stacking provisions of underinsurance motor vehicle policies, where multiple vehicles are insured, are invalid as contrary to public policy. We follow this holding in overruling defendant's preliminary objection to plaintiffs' claim that their benefits may be increased, or "stacked," in accordance with the number of their insured vehicles.

Finally, defendant contends that, because the underinsured motorist limits are less than the amount already recovered, plaintiffs are not entitled to underinsured motorist benefits as a matter of law. Because of our resolution of the first issue, namely that Mrs. Hepler has not waived her statutory right with respect to the limits of her underinsured motorist coverage, the factual assumption upon which this final preliminary objection is based is no longer correct. Accordingly, we need not address it further.

## ORDER

And now, March 2, 1989, defendant's preliminary objection to plaintiffs' claim for arbitration is sustained. The remaining preliminary objections of defendant are overruled.