Amy **CHARTAN, Individually and on behalf of her children, Eric J. Chartan and Dana E. Chartan, and as Co–Executrix of the Estate of Steven P. Chartan, deceased**

v.

**The CHUBB CORPORATION and Chubb and Son, Inc. and the Sea Insurance Company, Ltd.**

**Civ. A. No. 88–7993.**

United States District Court, E.D. Pennsylvania.

Nov. 15, 1989.

---

Morris M. Shuster, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, Pa., for plaintiff.

Robert B. White, Jr., Rapp, White, Janssen & German, Ltd., Philadelphia, Pa., for defendants.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiff Amy Chartan commenced this action to recover uninsured motorist benefits under an excess insurance policy. The claim stems from injuries sustained by plaintiff's decedent husband in an automobile accident. Presently before the court are cross motions for partial summary judgment filed by plaintiff and defendant Sea Insurance Company, Ltd. ("Sea") regarding the maximum amount recoverable under the excess policy. In addition, Sea requests that, once this court determines the applicable policy limit, the court stay further adjudication as to fault and amount pending commercial arbitration of those issues. For the reasons set forth below, the court holds that plaintiff is entitled to a maximum of $1,000,000 uninsured motorist coverage under the Sea policy, and that the issues of fault and amount are arbitrable. The court will therefore stay further proceedings pending commercial arbitration.

### I. Background

The following facts are undisputed. On November 28, 1986, plaintiff's decedent, Dr. Steven P. Chartan, was fatally injured by an uninsured motorist. At the time of the accident, decedent was insured under two policies, a primary policy written by The Aetna Casualty and Surety Company ("Aetna") and an excess policy written by defendant Sea. Both the Aetna and Sea policies covered two automobiles owned by decedent.

The Aetna primary policy provided $305,000 of liability coverage and $305,000 of uninsured motorist coverage for each accident. Separate provisions of the Sea excess policy stated that the limits for liability coverage and uninsured motorist coverage would not exceed that amount listed on the policy's coverage page. The coverage page stated, among other things, "Limit of Liability $1,000,000." At the bottom of the page was typed, "YOUR POLICY COV-

ERS 1 RESIDENTIAL PROPERTY, 2 VE-HICLES, 2 LICENSED DRIVERS."

In the fall of 1988, plaintiff arbitrated her claim for uninsured motorist benefits against Aetna under the primary policy. After hearing, the arbitration panel awarded plaintiff $610,000 from Aetna. Aetna made full satisfaction of this award in November 1988, in return for which plaintiff released Aetna from further liability. Shortly after the arbitration award, plaintiff commenced this action against, *inter alia*, Sea to recover uninsured motorist benefits under the Sea excess policy.

## II. Standard of Review

A motion for summary judgment will be granted only if the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Whether such a genuine issue exists is determined by whether the evidence is such that the fact-finder could find reasonably in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In this case, there remains a factual dispute regarding the precise manner in which the accident in question happened. However, these factual discrepancies will be relevant only when the questions of fault and damage amount are addressed at a later time. For purposes of deciding the parties' pending cross motions for summary judgment as to policy limit and arbitrability, there is no genuine issue of material fact. Moreover, the Third Circuit has recently held that issues such as policy limits and the arbitrability of claims, which relate to the interpretation of an insurance policy, are issues properly left to legal determination. *Myers v. State Farm Insurance Co.*, 842 F.2d 705, 708 (3d Cir.1988).

## III. Policy Limit

Plaintiff seeks to recover $2,000,000 from Sea, claiming that she is entitled to "stack" the uninsured motorist coverage on the two automobiles insured under the excess policy. Sea acknowledges that under Pennsylvania law plaintiff is entitled to stack uninsured motorist benefits even in the face of clear and unambiguous contractual language to the contrary. However, Sea contends that such stacking may not exceed the limits of third person liability coverage set forth in the plaintiff's policy. Sea maintains that plaintiff's recovery is necessarily limited to $1,000,000, the maximum amount available to third parties under the bodily injury provisions of her policy.

A threshold issue for the court to decide is whether liability coverage under the Sea policy is indeed unambiguously limited to $1,000,000. Plaintiff argues that the policy language, "Limit of Liability $1,000,000" and "YOUR POLICY COVERS ... 2 VEHICLES ..." is subject to two interpretations. According to plaintiff, this language could set a $1,000,000 coverage limit per vehicle for a total limit of $2,000,000, or it could set a maximum limit of $1,000,000 for two vehicles. Plaintiff contends that such ambiguity must be construed against the insurer, citing *Blocker v. Aetna Casualty & Surety Co.*, 232 Pa. Super. 111, 332 A.2d 476 (1975).

While an ambiguity in an insurance policy is normally construed against the insurer, courts will not strive to create an ambiguity where none in fact exists. *Patterson v. Reliance Insurance Companies*, 332 Pa. Super. 592, 481 A.2d 947 (1984); *Votedian v. General Accident Fire and Life Assurance Corp.*, 330 Pa.Super. 13, 478 A.2d 1324 (1984). Here, Sea's policy clearly indicated that its liability was limited to $1,000,000. Moreover, plaintiff's alternative construction of the policy language could give rise to ambiguity only if one permitted the stacking of liability coverage. However, this court has found no legal authority that would authorize the stacking of such third party liability coverage. On the contrary, where courts have held that stacking is permitted, the decisions have been limited to uninsured motorist coverage, *see, e.g., Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984); *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968), and underinsured motorist coverage, *Tallman v. Aetna Casualty and*

*Surety Co.*, 372 Pa.Super. 593, 539 A.2d 1354 (1988), *appeal denied*, 520 Pa. 607, 553 A.2d 969 (1988). For these reasons, the court is unpersuaded that one could sensibly construe the parties' agreement to provide $2,000,000 of liability coverage. The plain language of the policy unambiguously limits all coverage to $1,000,000.

■ The court must next determine whether, given the $1,000,000 liability coverage limit, plaintiff may nonetheless stack uninsured motorist coverage on the two automobiles insured under the excess policy. The controlling statute in this regard is the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat. Ann. §§ 1701 *et seq.* ("the MVFRL"). Neither the MVFRL nor its predecessors, the No–Fault Motor Vehicle Insurance Act [1] and the Uninsured Motorist Act,[2] refer directly to the propriety of stacking uninsured and underinsured coverage. As a result, the courts have been forced to determine how the purpose and policy of the various acts relate to the stacking issue.

The Pennsylvania Supreme Court first addressed the issue in 1968 when it struck down policy clauses prohibiting the stacking of uninsured motorist benefits. In *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968), the court held that such anti-stacking clauses, by failing to provide adequate protection to innocent victims of irresponsible drivers, violated public policy and the legislative intent behind the uninsured motorist statute. Later, in holding that all intended beneficiaries of an insurance policy were entitled to stack coverage, the Pennsylvania Supreme Court reiterated that stacking furthered the goal of the legislature to provide protection to innocent

victims. *Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 338, 473 A.2d 1005, 1010 (1984).[3]

An issue left unaddressed by earlier opinions, however, is when, if ever, contractual proscriptions against stacking are permissible. Against this backdrop, the General Assembly enacted the MVFRL. The basic provisions dealing with uninsured and underinsured motorist coverage are found in Subchapter C of the statute, §§ 1731–1736. Section 1731 sets general minimum requirements for uninsured and underinsured motorist coverage for a motor vehicle equal to the minimum amount of liability coverage required under the statute. 75 Pa.Cons.Stat.Ann. § 1731(a).[4] The section also notes, in language parallelling that of the Uninsured Motorist Act, that a major purpose of the MVFRL is to provide protection to innocent persons injured by uninsured or underinsured drivers. 75 Pa. Cons.Stat.Ann. §§ 1731(c).

Sections 1734 and 1736 delineate the extent of this protection. Section 1734 allows an insured to elect uninsured and underinsured coverage in amounts less than the insured's liability coverage, provided that this coverage does not fall below the minimum requirements of §§ 1702 and 1731. Section 1736, however, states that an insured who purchases liability coverage in excess of the minimum amount required by the MVFRL may obtain uninsured and underinsured motorist coverage in an amount equal to, *but not greater than*, the amount of liability coverage. 75 Pa.Cons. Stat. § 1736 (emphasis added). Thus, the plain language of § 1736 undercuts plaintiff's argument by setting limits on the amount of recoverable uninsured benefits.

---

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.*, repealed by the Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

2. Act of August 14, 1963, P.L. 909, 40 Pa.Stat. Ann. § 2000.

3. Under the *Utica* holding, plaintiff is such a "Class One" insured, or intended beneficiary, of decedent's policy. Therefore there is no question about plaintiff's right to stack uninsured motorist benefits in the first instance.

4. The Act elsewhere requires liability coverage in no less than "the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident...." 75 Pa. Cons.Stat.Ann. § 1702. Here, plaintiff's liability and uninsured/underinsured motorist coverage greatly exceeds these minimum requirements.

Permitting individuals to stack uninsured or underinsured motorist coverage beyond that of liability coverage would be inconsistent with § 1736 and undermine the purpose behind it. The legislature's intent in enacting § 1736 was to "prevent the new insurance system from degenerating into a purely first-party insurance system, where each driver [was] insured against his or her own loss, but no driver insure[d] against the damage he or she may do to others." J. Ronca, L. Sloane & J. Mundy, *An Analysis of the Financial Responsibility Law* 104, § 6:11 (1986). As the Pennsylvania Superior Court recently noted in discussing this section:

> The legislature has thus prevented an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.

*Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super 51, 55 n. 3, 535 A.2d 1145 (1988) (en banc).

Acceptance of plaintiff's argument would permit individuals effectively to orchestrate coverage to provide adequately for their own loss but not that of potential victims of their negligence. Thus, an individual with four cars could obtain $120,000 of protection for himself while only bearing responsibility for $30,000 in damages to others. The legislature reasonably could not have intended to permit by means of stacking what it forbade by means of purchasing coverage directly.

The question of whether § 1736 limits the extent of permissible stacking to the insured's limit of liability has yet to be directly addressed by a Pennsylvania appellate court. However, the recent decisions in *Tallman, supra*, and *Wolgemuth, supra*, support a finding that § 1736 does place such limits on stacking. The court notes that, while not binding, these decisions do provide guidance on how the state's highest court would rule. *See Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273-74 (3d Cir.1985) ("[F]ederal courts must attribute significant weight to [lower state court] decisions in the absence of any indication that the highest state court would rule otherwise."); *Adams v. Cuyler*, 592 F.2d 720, 725 n. 5 (3d Cir.1979) ("Federal courts are not bound to, but may consider the pronouncements of state intermediate appellate courts as an indication of how the state's highest court would rule."), *aff'd*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).

In *Wolgemuth,* the Pennsylvania Superior Court, sitting en banc, held that an injured guest passenger in a single vehicle accident could not recover under both the liability and underinsured coverages of the vehicle owner's policy. In holding against double recovery, the Superior Court emphasized the limit set in § 1736 when discussing the general provisions of the MVFRL:

> An insured who purchases liability coverage in an amount greater than the minimum amount required by the Motor Vehicle Financial Responsibility Law may obtain uninsured and underinsured coverages in amounts equal to, *but not greater than*, the amount of his liability coverage.

370 Pa.Super at 55, 535 A.2d 1145 (emphasis in *Wolgemuth* ).

In the *Tallman* case, the court held that stacking of coverage extended to underinsured as well as uninsured benefits. In reaching its decision, the court stated:

> Unlike Appellant we do not read the provisions of Subchapter C to place a ceiling on the amount of underinsurance a victim may recover. Although an insured may obtain uninsured and underinsured coverages in amounts equal to, but not greater than, the amount of his liability coverage, there is no restriction on the maximum liability insurance limit that may be written. Thus, it follows there is no restriction on the maximum uninsured or underinsured motorist coverage limits.

372 Pa.Super at 601-02, 539 A.2d 1354. This statement makes clear that, while there is no *absolute* limit on the amount of uninsured and underinsured benefits available, there is an explicit *relative* limit imposed by § 1736, i.e., an amount no greater than the amount of one's liability coverage.

Plaintiff's citation to *Nonemacher v. Aetna Casualty & Surety Co.*, 710 F.Supp.

602 (E.D.Pa.1989), in support of her interpretation of the statute, is unavailing. In that case, no one ever questioned whether an insured can stack underinsured motorist coverage in excess of his liability coverage. The issue put before the court in *Nonemacher* was whether the offset for a liability payment should be made before or after any stacking occurs. The court never was required to analyze or apply § 1736 and, indeed, there is no discussion whatsoever of § 1736 in *Nonemacher*.

Plaintiffs argue that, because §§ 1702, 1731 and 1782 set uninsured and underinsured coverage requirements for "a" or "any" motor vehicle registered in Pennsylvania, § 1736 necessarily refers to an insurance policy that covers only one vehicle.[5] Such a reading of the statute not only is tortured, but also fails to recognize that the minimum financial requirements set by the statute are the same regardless of the number of vehicles covered under a particular policy.

Plaintiff next argues that the limitation in § 1736 should have been reiterated in §§ 1731(d) and 1733 if the General Assembly intended it to prevent stacking of uninsured motorist coverage in excess of liability coverage. Section 1731(d) forbids an insured's dual recovery under both uninsured and underinsured motorist coverage, while § 1733 establishes the order of priority of recovery where multiple policies cover the insured. These sections are not inconsistent with § 1736. The General Assembly need not buttress the express limitation in § 1736 with redundant language elsewhere throughout the statute.

Finally, plaintiff argues that, because § 1717 of the statute expressly forbids stacking of first party benefits, and because no such provision appears in Subchapter C, the legislature intended to permit stacking of uninsured benefits in excess of liability coverage.[6] While the premises of plaintiff's argument are valid, her conclusion is not sound. *Tallman* estab-

lished the right to stack coverage under Subchapter C in those instances where an insured has made an election pursuant to § 1734. Section 1736, however, reflects a clear decision by the General Assembly to limit the extent to which such coverage may be stacked. In short, one would not expect to find a provision parallelling that of § 1717 in Subchapter C for the simple reason that § 1717 bars stacking entirely while Subchapter C does not.

Section 1736 allows only two possibilities. The first is that one may obtain uninsured coverage and recover in an amount equal to the liability coverage the insured has provided for others. The second is that one may obtain uninsured coverage in an amount equal to one's liability coverage and then may recover that amount multiplied by the number of cars he owns and insures. Only the first possibility is consistent with the legislative intent and public policy rationale underlying this statutory provision as articulated by the Superior Court.

For the foregoing reasons, the court concludes that plaintiff's coverage under the Sea excess policy is limited to $1,000,000 dollars.

## IV. Equitable Set–Off

■ Sea contends that, in light of the above holding, it is entitled to an equitable set-off of $305,000, constituting the overpayment plaintiff received from Aetna under plaintiff's primary policy. Sea correctly points out that Aetna's $610,000 payment on a policy limiting liability coverage to $305,000 was in excess of the limitation in § 1736 on recovery of uninsured and underinsured benefits. The court does not accept, however, that it is therefore in the interests of equity to further limit plaintiff's coverage under the Sea excess policy to $695,000.

To the extent plaintiff's combined recovery may be less than $1,610,000, Sea will

---

5. Section 1782 makes motor vehicle liability insurance an accepted manner of providing proof of financial responsibility, the actual minimum requirements of which are set forth in § 1702.

6. Section 1717 is entitled "Stacking of Benefits" and states:

First party benefits shall not be increased by stacking the limits of coverage of:
1. multiple motor vehicles covered under the same policy of insurance; or
2. multiple motor vehicle policies covering the individual for the same loss.

get a windfall. In addition, Aetna will have subsidized Sea's coverage of plaintiff by as much as $305,000 if plaintiff's recovery under the excess policy is ultimately $695,000 or less. It is neither equitable nor appropriate to permit Sea to benefit further from Aetna's failure or decision not to question the excess amount claimed by plaintiff.

Therefore, Sea's request for equitable set-off will be denied.

## V. Arbitration

█ Finally, Sea maintains that the provisions of the primary and excess policy require plaintiff to submit to arbitration all disputes relating to fault and amount of damages, and accordingly now requests this court to stay further proceedings pending commercial arbitration of those issues.

Although Sea's excess policy does not contain an arbitration clause, coverage under the policy expressly incorporates by reference the terms and conditions of the Aetna primary policy relating to uninsured motorist coverage.[7] The Aetna policy expressly provides that either party may demand arbitration of disputes relating to liability and the amount of payment that may be owed.[8]

Pennsylvania law favors arbitration, *Safeco Insurance Company of America v. Wetherill*, 622 F.2d 685, 687 (3d Cir.1980), and private agreements to submit justiciable controversies to arbitration are generally enforceable. *Flightways Corp. v. Key-*

*stone Helicopter Corp.*, 459 Pa. 660, 331 A.2d 184 (1975); *Borough of Ambridge Water Authority v. Columbia*, 458 Pa. 546, 328 A.2d 498 (1974). Federal courts are required to enforce such arbitration agreements pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*,[9] although a party who can establish that the agreement to arbitrate did not embrace the dispute in issue may enjoin an arbitration proceeding. *La Course v. Firemen's Insurance Company of Newark, N.J.*, 756 F.2d 10, 12 (3d Cir.1985).

It is well established that issues of fault and amount of damages are arbitrable if the parties have agreed to arbitrate those issues upon demand. *See Myers v. State Farm Insurance Co.*, 842 F.2d 705, 708 (3d Cir.1988) (legal determination of available coverage must precede arbitrable issues of fault and amount of damage). The only dispute in this case is whether the parties have in fact contracted to arbitrate these issues. Without citing to any authority, plaintiff contends that the arbitration clause in the Aetna policy merely provides a method of dispute resolution, and is not a "term" or "condition" for purposes of incorporation into coverage under the excess policy. Plaintiff contends that the "terms and conditions" of the primary policy consist only of definitions and statements of circumstances under which the insured would not be covered under the policy. Because arbitration is a method of dispute resolution rather than a condition precedent to receiving coverage, argues plain-

---

7. Under the general heading "Insuring Agreements," paragraph 1B of the Sea excess policy states in relevant part:
    ... provided coverage hereunder for loss involving such uninsured or underinsured automobile shall apply only in accordance with the terms and conditions of primary Uninsured and Underinsured Motorists insurance provided to the insured at the time of the loss.

8. Part C of the Aetna policy provides in part:
    ARBITRATION
    If we and a covered person do not agree:
    1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle; or
    2. On the amount of payment which may be owed under this insurance;

either party may make a written demand for arbitration in accordance with the provisions of the Pennsylvania Uniform Arbitration Act....

9. Section 3 of the Act states as follows:
    STAY OF PROCEEDINGS WHERE ISSUE THEREIN REFERABLE TO ARBITRATION
    If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**856**

tiff, it is not a "term or condition" incorporated by reference into the excess policy.

The court is unpersuaded. Plaintiff fails to distinguish between the process by which a claim is arbitrated and the actual agreement to submit disputes to arbitration in the first place. The act of arbitration itself is procedural, but the agreement to submit disputes relating to liability and amount to arbitration clearly is a condition precedent to receiving coverage under a particular policy.

A contract "term" is any portion of the agreement relating to a particular matter. *Black's Law Dictionary* 1318 (5th ed.1979). Any contract clause which modifies the principal obligation is a "condition" and this includes matters set forth in an insurance policy with which the insured must comply. *Id.* at 265. *See also Cook Chocolate Co. v. Salomon, Inc.*, 684 F.Supp. 1177, 1183 (S.D.N.Y.1988) (finding arbitration provision is "relevant term and condition" of contract for purposes of incorporation by reference).

Plaintiff's entitlement to benefits was unqualifiedly conditioned upon her agreement to submit disputes to arbitration upon demand by Aetna. When a failure of an insured to adhere to an arbitration provision excuses compliance by an insurer with its obligations, that provision is clearly a material term and condition of the contract. Had plaintiff refused to submit her claim under the primary policy to arbitration, Aetna indisputably would have been excused from its contractual obligations. Therefore, the court concludes that the agreement to submit issues of fault and damages to arbitration was a term and condition of coverage under the Aetna primary policy. As such, it was incorporated into the text of the excess policy.

In light of Sea's written demand, the court will stay adjudication of the issues pertaining to fault and amount of any damages recoverable pending arbitration.

An appropriate order follows.