JIULIANTE, P.J.,
This matter is before the court on plaintiff’s motion for summary judgment on its complaint for declaratory judgment. Part of plaintiff’s prayer for declaratory relief requests the court declare that the limit of underinsured motorist coverage provided to defendant under her policy is $25,000. Plaintiff further requests that the limit of underinsured motorist coverage from her parents’ policy not exceed the limits of the third-party bodily injury liability coverage of $25,000.
FACTUAL STATEMENT OF THE CASE
This underinsured motorist claim arises from serious personal injuries sustained by defendant, Gail McGaughey, on April 20, 1987, when the motor vehicle which she was driving was rear-ended by Michael Julius. At the time of the accident, Julius was insured under a policy of insurance with liability *226 limits of $15,000/$30,000. Gail McGaughey had in effect a policy of motor vehicle insurance issued by Erie Insurance Exchange covering two vehicles owned by McGaughey, a 1978 Ford and 1986 Nissan which she was driving at the time of her accident. The policy provided bodily injury liability limits of $25,000/$50,000 and underinsured motorist coverage of $25,000/$50,000 applicable to each vehicle per accident. The policy also states that the underin-sured motorist coverage available for all damages suffered by one person for one accident is $25,000; that is, the policy does not allow “stacking” of underinsured motorist benefits.
Gail McGaughey, after receiving from Erie a consent to settle, settled the action against Julius for $15,000. However, Gail McGaughey’s damages arising out of the accident exceed $15,000, and she has advised Erie of her intentions to present a claim for the underinsured motorist benefits of her policy in the amount of $50,000. Erie has filed this action and raised the issue as to whether or not Gail McGaug-hey is permitted to stack her underinsurance coverage. They claim that although she has insured two vehicles and paid two separate premiums for under-insured motorist coverage, that she may recover damage only to the extent of the liability coverage under the same policy. Moreover, Gail McGaughey is an “insured” under a separate policy of insurance issued to her parents by Erie which insured four vehicles owned by the McGaugheys with underin-sured motorist benefits of $25,000/$50,000 per vehicle. At the time of the accident in question, defendant contends that Ms. McGaughey was a resident of her parents’ household and thus entitled to benefits under that policy as well.
In essence, defendant is attempting to “stack” the underinsured motorist coverage on the two *227 automobiles insured under her policy, that is, defendant seeks to recover the $25,000 one injured/one accident limits applicable to both vehicles insured under her policy.
Erie has filed the present declaratory-judgment action because it contends that defendant has only $25,000 in underinsured motorist coverage available to her. Plaintiff’s argument is that because Pennsylvania’s Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., along with the Commonwealth and federal cases construing the MVFRL, precludes the underinsured motorist coverage of a policy from exceeding the amount of the bodily injury liability coverage of that policy. Erie contends that the underinsured motorist coverage available to defendant under her policy with Erie may not exceed the bodily injury liability coverage of the policy, i.e. $25,000.
DISCUSSION
At the outset, the court notes' that plaintiff’s motion for summary judgment seeks a judicial determination of defendant’s right to stack the unde-rinsured motorist coverage of a policy when the total amount of the stacked coverage would exceed the amount of the liability coverage of that policy. The policy from which defendant demands underin-sured motorist benefits provides that disagreements between Erie and its insureds regarding underin-sured motorist coverage are to be resolved by arbitration. Pennsylvania law provides that such arbitration agreements provide the arbitrators with exclusive jurisdiction to determine disagreements regarding who was at fault for the subject accident and the monetary value of the claim. See e.g., Myers v. State Farm Insurance Company, 842 F.2d 705, *228 707 (3d Cir. 1988); Nonemacher v. Aetna Casualty and Surety Company, 710 F.Supp. 602, 605 (E.D. Pa. 1989).
However, a question of coverage, such as the right of a claimant to stack coverages, is an issue for the court to determine. Metropolitan Property and Liability Insurance Company v. Streets, 856 F.2d 526, 529 (3d Cir. 1988); LaCourse v. Firemen’s Insurance Company of Newark, New Jersey, 756 F.2d 10, 13-4 (1985). Thus, the legal issue for this court’s determination is whether an insured may stack the underinsured motorist coverage of a policy so as to provide coverage in excess of the third-party liability limits of the same policy. The remaining issues present in defendant’s claim will be determined by arbitration. However, the legal issue to be determined herein is equally applicable to defendant’s claim against her parents’ policy. Therefore, this court shall determine whether the underinsured motorist coverage limits of defendant’s parents’ policy may or may not exceed the bodily injury liability limits of that policy in the event the arbitrators decide that defendant is covered by her parents’ policy.
The Pennsylvania Rules of Civil Procedure provide that a motion for summary judgment shall be granted:
“[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.” Pa.R.C.P. 1035(b).
Summary judgment should be granted when the right to judgment is clear and free from doubt, and when the facts are undisputed and only one conclusion can reasonably be drawn from them. Johnson *229 v. Walker, 376 Pa. Super. 302, 545 A.2d 947 (1988); Askew v. Zeller, 361 Pa. Super. 35, 521 A.2d 459 (1987).
Inasmuch as the questions involved are simply those of law and no material facts are in dispute, the present case is appropriate for summary judgment.
For the following reasons, the court is compelled to conclude that the underinsured motorist benefits in this case may not exceed the bodily injury liability coverage of defendant’s policy. The court shall grant plaintiff’s requested declaratory relief.
The motor vehicle accident from which the present litigation arose occurred on April 20, 1987. On the day of the accident, defendant was insured by an Erie automobile insurance policy which had been renewed on November 29, 1986.
The MVFRL governs the interpretation and effect of automobile insurance policies issued or renewed after October 1, 1984. Se& Borysowski v. State Farm Mutual Automobile Insurance Company, 368 Pa. Super. 399, 534 A.2d 496 (1987); see also 75 Pa.C.S. §1701 — Historical Note. Therefore, the MVFRL applies in this case to determine what coverage is available to defendant from the Erie policy.
Subchapter C of the MVFRL contains those provisions which govern uninsured motorist and unde-rinsured motorist coverage. 75 Pa.C.S. §§1531 to 1736. Section 1736 provides:
“The [uninsured and underinsured] coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured’s policy. ” 75 Pa.C.S. §1736. (emphasis supplied)
Chartan v. Chubb Corporation, 725 F.Supp. 849 (E.D. Pa. 1989) (applying Pennsylvania law) dealt *230 with precisely the issue at hand.* In Chartan, the plaintiff’s husband was killed in an accident with an uninsured motorist. The decedent was covered by an automobile insurance policy issued by the Sea Insurance Company. 725 F.Supp. at 850-1. The Sea policy provided $1 million in bodily injury liability coverage and $1 million in uninsured motorist benefits. 725 F.Supp. at 852. However, the Sea policy covered two vehicles which. were owned by the plaintiff’s decedent. Although the Sea policy contained no-stacking language similar to that present in the policies at issue herein, the plaintiff argued that the uninsured motorist coverage available to her was $2 million since Pennsylvania generally allows stacking of uninsured motorist coverage despite no-stacking provisions. 725 F.Supp. at 850-1.
The Chartan court held that the plaintiff could not stack the uninsured motorist coverage of the Sea policy because to do so would provide the plaintiff with uninsured motorist coverage in excess of the liability coverage of the policy. 725 F.Supp. at 854. The basis for the decision is four-pronged: the plain language of section 1736 of the MVFRL, the legislative intent behind section 1736 and the MVFRL, public policy and Pennsylvania appellate authority.
First, the Chartan court concluded that to allow recovery of uninsured or underinsured coverage in excess of the amount the policy provides for liability claims would violate the plain language of the MVFRL:
“Section 1736 . . . states that an insured who purchases liability coverage in excess of the mini *231 mum amount required by the MVFRL may obtain uninsured and underinsured coverage in an amount equal to, but not greater than, the amount of liability coverage. . . . Thus the plain language of section 1736 undercuts plaintiff’s argument by setting limits on the amount of recoverable uninsured benefits. ” 725 F. Supp. at 852. (emphasis supplied)
The Chartan court was correct in deciding that the plain language of the MVFRL precludes a policy from providing more in uninsured motorist or under-insured motorist coverage than liability coverage. When interpreting the MVFRL, Pennsylvania courts turn for guidance to the Statutory Construction Act, 1 Pa.C.S. §1501 et seq., in the absence of a specific statement of findings and purpose within the law. Wolgemuth v. Harleysville Mutual Insurance Company, 370 Pa. Super. 51, 535 A.2d 1145 (1988). The act provides that the intention of the General Assembly is to be ascertained and effectuated. 1 Pa.C.S. §1921. Thus, words of a statute which are clear and free from ambiguity are to be enforced unless the provision violates public policy. Tallman v. Aetna Casualty and Surety Co., 372 Pa. Super. 593, 595, 539 A.2d 1354, 1355 (1988). Consequently, this court may not ignore the clear prohibition in section 1736 or rewrite the MVFRL “under the pretext of pursuing its spirit.” Wolgemuth, 370 Pa. Super, at 62, 535 A.2d at 1151; Allen v. Erie Insurance Co., 369 Pa. Super. 6, 11, 434 A.2d 839, 841 (1987).
A review of the entire MVFRL reveals that the plain language of section 1736 should be given effect. Nowhere in the MVFRL has the General Assembly expressly required or permitted the stacking of uninsured or underinsured motorist coverage. Similarly, no express prohibition of stacking of uninsured or underinsured motorist coverage was *232 written into the law. Tallman, 372 Pa. Super, at 599, 539 A.2d at 1357.
Prior to the enactment of the MVFRL, the principle of allowing insureds to stack uninsured or underinsured coverage was created entirely by the Pennsylvania appellate courts fashioning their perception of public policy. Because the General Assembly is presumed to have been familiar with the law as it existed prior to enactment of MVFRL, Tallman, 372 Pa. Super, at 598, 539 A.2d at 1357, the principle of stacking should be deemed to continue under the MVFRL only to the extent it has not been expressly repudiated and is not in conflict with the clear and unambiguous language of the act. While it is true that the statutory language does not expressly prohibit stacking of uninsured or underinsured motorist coverage as it does first-party benefits coverage under section 1717, it is equally true that the stacking of uninsured motorist coverage which plaintiff seeks here is directly in the face of the clear and unambiguous language of section 1736. Thus, reading the text of section 1736 in light of applicable principles of statutory construction reveals no viable reason that the plain words of section 1736 should not be given effect and operate to preclude recovery of uninsured or underinsured motorist coverage in excess of the liability coverage of the same policy.
The Chartan court further concluded that not only does stacking uninsured motorist or underinsured motorist coverage in excess of the liability coverage violate the plain language of the MVFRL, it also violates the legislative intent behind the statute:
“Permitting individuals to stack uninsured or un-derinsured motorist coverage behind that of liability coverage would be inconsistent with section 1736 and undermine the purpose behind it.
*233 “The legislature’s intent in enacting section 1736 was to ‘prevent the new insurance system from degenerating into a purely first-party insurance system, where each driver [was] insured against his or her own loss, but no driver insure[d] against the damage he or she may do to others.’ J. Ronca, L. Sloane & J. Mundy, An Analysis of the Financial Responsibility Law, 104, §6:11 (1986). As the Pennsylvania Superior Court recently noted in discussing this section: ‘The legislature has thus prevented an insured from providing greater coverage, via uninsured/underinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.’ Wolgemuth v. Harleysville Mutual Insurance Co., 370 Pa. Super. 51, 55 n.3, 535 A.2d 1145, [1147 n.3] (1988).”
The Chartan court correctly interprets the legislative intent behind section 1736 and the MVFRL. In enacting the MVFRL, the Pennsylvania legislature sought to ensure that all persons operating motor vehicles in Pennsylvania would be financially responsible by requiring each operator to procure liability insurance in at least a minimum amount. Allen v. Erie Insurance Co., 369 Pa. Super. 6, 534 A.2d 839 (1987). While the legislature did further some benefits to insureds, the underlying intent of the MVFRL was to promote financial responsibility of drivers to injured third parties.
As noted by the Chartan court, section 1736 was enacted to further the legislature’s intent to prevent Pennsylvania’s insurance system from “degenerating into a purely first-party system.” The only way to effectively implement that intent is to enforce section 1736 as the Chartan court has.
The Chartan court also recognized the negative public policy ramifications of allowing the uninsured *234 motorist or underinsured motorist coverage of a policy to exceed the liability coverage of that policy:
“Acceptance of plaintiff’s argument would permit individuals to effectively orchestrate coverage to provide adequately for their own loss but not that of potential victims of their negligence. Thus, an individual with four cars could obtain $120,000 of protection for himself while only bearing responsibility for $30,000 in damages to others. The legislature reasonably could not have intended to permit by means of stacking what it forbade by means of purchasing coverage directly.” 725 F.Supp. at 853.
To allow stacking of underinsured coverage in excess of the policy’s liability coverage would allow an insured to provide significantly greater protection for himself than for the benefit of third parties he injures. This result would severely undermine the general tort orientation of the MVFRL and be directly contrary to the Pennsylvania legislature’s public policy determinations.
The Chartan decision thoroughly discusses, analyzes and applies all relevant Pennsylvania appellate authority and found that the case law supports its holding. We concur. The Chartan court stated:
“In Wolgemuth [v. Harleysville Mutual Insurance Co., supra], the Pennsylvania Superior Court, sitting en banc . . . emphasized the limit set in section 1736 when discussing the general provisions of the MVFRL: ‘An insured who purchases liability coverage in an amount greater than the minimum amount required by the Motor Vehicle Financial Responsibility Law may obtain uninsured and under-insured coverage in amounts equal to, but not greater than, the amount of his liability coverage.’ 370 Pa. Super, at 55[, 535 A.2d at 1147.] (emphasis in Wolgemuth)
*235 “In the Tallman [v. Aetna Casualty and Surety Co., supra] case . . . the court stated: ‘Unlike appellant we do not read the provisions of Sub-chapter C to place a ceiling on the amount of underinsurance a victim may recover. Although an insured may obtain uninsured and underinsured coverages in amounts equal to, but not greater than, the amount of his liability coverage, there is no restriction on the maximum uninsured or underin-sured motorist coverage limits.’ 372 Pa. Super, at 601-2[, 539 A.2d at 1358] . . . This statement makes clear that, while there is no absolute limit on the amount of uninsured and underinsured benefits available, there is an explicit relative limit imposed by section 1736, i.e., an amount no greater than the amount of one’s liability coverage.” 725 F.Supp. at 853. (emphasis in original)
In further support of the conclusion reached in Chartan, it is significant that the Tallman decision, on which defendant relies, expressly adopted the Wolgemuth court’s construction of section 1736:
“The legislature has thus prevented an insured from providing greater coverage, via uninsured/un-derinsured coverages, for himself and his additional insureds than the amount of coverage he provides for others injured through his negligence.” 372 Pa. Super, at 602, 539 A.2d at 1358-9. As is well-documented by the Chartan court, it is clear that Pennsylvania appellate case law supports the Char-tan holding.
Contrary to the defendant’s argument that under-insured motorist coverage may be stacked in reliance on Tallman, this court concludes that Tallman does not control the issue in this case because the court there decided only that underinsured motorist coverage may be stacked to provide underinsured motorist coverage equal to the liability coverage of *236 the policy. 372 Pa. Super, at 602, 539 A.2d at 1358. Tallman cannot be read as support for stacking of uninsured motorist/underinsured motorist coverage where the stacked coverage would exceed the liability coverage of the policy, which is what defendant herein seeks to do.
While this court does not have to accept Chartan as controlling authority, the case thoroughly examined all applicable Pennsylvania law. Pennsylvania courts have held that such a well-reasoned federal district court opinion merits deference by Pennsylvania state courts. North Penn Consumer Discount Co. v. Schultz, 250 Pa. Super. 530, 378 A.2d 1275 (1977).
The automobile policy at issue specifically precludes the stacking of underinsured motorist benefits. The Uninsured/Underinsured Motorists Coverage portion of the policy provides:
“The amount shown on the Declarations for ‘each person’ is the limit of protection for all damages because of injury to one person as the result of one accident. . . . The insuring of more than one person or auto under these coverages does not increase the limits of protection.”
The continuation notice of defendant’s policy states that the amount of coverage for each person for injuries arising from one accident is $25,000. Nonetheless defendant, who is one person who suffered injury in one accident, seeks to recover twice the underinsured coverage limits because she contends she can stack the limits because two cars were covered by the policy. The Chartan decision reveals that the proper interpretation of Pennsylvania law gives effect to the policy’s anti-stacking provision and limits defendants’ underinsured motorist coverage to $25,000.
*237 The Chartan court’s analysis of section 1736 of the MVFRL is extremely well-reasoned, and should be seen as determinative of the present case. Since section 1736 limits the underinsured motorist coverage of the policy in question to the same as the bodily injury liability coverage — in this case $25,000 — defendant herein may not be permitted to stack her underinsurance coverage to a total limit greater than $25,000.
And now, October 11, 1990, for the reasons set forth herein, the court further declares that the limit of underinsured motorist coverage provided to defendant under the subject policy is $25,000 and further that the limits of underinsured motorist coverage of the policy of insurance issued to the defendant’s parents may not exceed the limits of the third-party personal injury liability coverage of that policy.
ORDER
It is hereby ordered, adjudged and decreed this October 11, 1990, that plaintiff’s motion for summary judgment is granted and judgment is entered in plaintiff’s favor and against defendant as follows:
The limits of the underinsured motorist coverage of the policy of motor vehicle insurance issued by plaintiff to defendant may not exceed the limits of the third-party personal injury liability coverage of that policy, i.e. $25,000.
The limits of the underinsured motorist coverage of the policy of motor vehicle insurance issued by plaintiff to defendant’s parents may not exceed the limits of the third-party personal injury liability coverage of that policy, i.e. $25,000.

 While the Chartan plaintiff sought uninsured motorist benefits and defendant herein seeks underinsured motorist benefits, the Chartan court’s decision is expressly applicable to both uninsured and underinsured claims and coverages. See 725 F.Supp. at 853.