Amy **CHARTAN, Individually and on Behalf of her children, Eric J. Chartan and Dana E. Chartan, and as Co–Executrix of the Estate of Steven P. Chartan, Deceased**

v.

**THE CHUBB CORPORATION and Chubb and Son, Inc., and the Sea Insurance Company, Ltd.**

No. 88–7993.

United States District Court, E.D. Pennsylvania.

Aug. 29, 1990.

Order of Judgment Oct. 19, 1990.

---

**1126**

Morris M. Shuster, Cohen, Shapiro, Polisher, Shiekman & Cohen, William D. Marvin, Philadelphia, Pa., for plaintiff.

Robert B. White Jr., Philadelphia, Pa., for the Chubb Corp & Chubb & Son, Inc & Sea Ins. Co., Ltd.

## MEMORANDUM

WALDMAN, District Judge.

On November 28, 1986, plaintiff's decedent-husband was fatally injured when he was struck by an uninsured motorist. After recovering $610,000 of uninsured motorist benefits under a primary policy issued by the Aetna Casualty and Surety Company ("Aetna"), plaintiff commenced this action seeking an additional $2,000,000 under an excess insurance policy issued by defendant Sea Insurance Company, Ltd. ("Sea").

The court granted partial summary judgment in favor of Sea and against plaintiff by Memorandum opinion of November 16, 1989, finding that Sea's maximum limit of liability to plaintiff was $1,000,000, the amount of liability coverage in decedent's policy insuring his two automobiles. The court held that § 1736 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. § 1701 *et seq.* ("MVFRL"), limited the "stacking" of uninsured motorist benefits to an amount not in excess of the insured's third-party liability coverage.[1] The court also stayed further adjudication of this case pending commercial arbitration of the issues of fault and the amount of damages plaintiff was entitled to recover. *Chartan v. Chubb Corp.,* 725 F.Supp. 849 (E.D.Pa.1989). Prior to the commencement of arbitration, Sea acknowledged that plaintiff was legally entitled to recover the full $1,000,000 in uninsured motorist benefits under its policy.

Sea now seeks final judgment under Fed. R.Civ.P. 54(b) in favor of plaintiff and against defendant Sea in the amount of $1,000,000.[2] Plaintiff opposes this motion

---

1. Section 1736 provides as follows:
   The coverages provided under this subchapter may be offered by insurers in amounts higher than those required by this chapter but may not be greater than the limits of liability specified in the bodily injury liability provisions of the insured's policy.

2. Plaintiff contends that final judgment cannot be entered on their claim against the Chubb defendants because of an extant dispute about their liability to her. Plaintiff's theory appears to be that Chubb may be liable to her if Sea is unable to satisfy any judgment that she may obtain against Sea. If this is the basis of plaintiff's claim against Chubb, in the absence of any allegation that it is an "alter ego" of Sea, it is doubtful that this claim can be sustained in the context of this action. The Chubb defendants, however, have not moved for summary judgment.

on three grounds. First, plaintiff requests reconsideration of the court's November 16, 1989 ruling that stacking of uninsured and underinsured motorist coverage cannot exceed liability coverage pursuant to § 1736 of the MVFRL. Second, plaintiff argues that, even if § 1736 bars stacking of uninsured benefits in excess of liability coverage, she should be permitted to do so anyway since the excess policy in question allegedly provides for unlimited stacking. Finally, plaintiff maintains that she is entitled to prejudgment interest on any judgment she obtains, and that determination of the proper amount of interest should be left to arbitration. The court will address each of these contentions separately.

### I. *Plaintiff's Request for Reconsideration*

■ Local Rule of Civil Procedure 20(g) requires that a motion for reconsideration be served within ten days after entry of the court's judgment or order. Plaintiff's request for reconsideration was served nearly seven months after the court's November 16, 1989 Order. Plaintiff contends that her motion is in fact timely since she was not "prejudiced" by the court's ruling until Sea acknowledged that she was entitled to at least $1,000,000 of coverage. Plaintiff concludes that "judicial efficiency" would therefore not have been served by requiring her to file a timely motion for reconsideration because the effect of the court's ruling may have been mooted. The court will dispose of plaintiff's request for reconsideration on the merits.

■ Since November 16, 1989, three judges in this district have expressly adopted and applied this court's interpretation of § 1736. *See West American Ins. Co. v. Park*, 1990 WL 87284, 1990 U.S.Dist. LEXIS 7806 (E.D.Pa. June 19, 1990) (Weiner, J.); *American Fire and Casualty Co. v. Steinmetz*, No. 90-1620 (E.D.Pa. June 22, 1990) (Fullam, J.) (order precluding stacking where uninsured coverage equals liability coverage); *Moldover v. The Chubb Group of Insurance Companies*, No. 89-6962 (E.D.Pa. May 10, 1990) (Katz, J.). Two judges have disagreed and would permit unlimited stacking.

In *The North River Ins. Co. v. E. James Tabor, Administrator*, 744 F.Supp. 625 (M.D.Pa.1990), Judge Rambo appears to read *Chartan* as holding that § 1736 prohibits any stacking. Since state courts have permitted stacking, she evinced disagreement with *Chartan*. In fact, citing the same state court cases, this court recognized in *Chartan* that stacking is permitted under the MVFRL. The court in *Chartan* held only that § 1736 effectively placed a *relative* limit on stacking equal to that of the insured's third-party liability coverage.

In *Byers v. Amerisure Insurance Company*, 745 F.Supp. 1073 (E.D.Pa.1990), Judge Cahn also expressed disagreement with *Chartan* and the other cases in this district reaching the same result. The *Byers* court bases its disagreement on three things: a rejection of the purpose of § 1736 as found by the court in *Chartan;* a determination that, without unlimited stacking, insurers could avoid coverage they had charged for; and, a conclusion that the addition of § 1738 shows that an earlier legislature intended to permit unlimited stacking.

Particularly in view of the inability of the *Byers* court to ascertain any logical purpose for § 1736 other than that articulated in *Chartan*, the court finds the *Byers* opinion to be unpersuasive.

The *Byers* court rejects the stated policy purpose of § 1736 set forth in the only state appellate court opinions to address the question on the ground that the statements were *dicta* in the context of those particular cases. *See Tallman v. Aetna Casualty and Surety Co.*, 372 Pa.Super. 593, 601-02, 539 A.2d 1354 (1988), *appeal denied*, 520 Pa. 607, 553 A.2d 969 (1988); *Wolgemuth v. Harleysville Mutual Insurance Co.*, 370 Pa.Super. 51, 53 n. 3, 535 A.2d 1145 (en banc). In ascertaining the purpose of a state statute, the court finds that insights into that purpose provided by the Commonwealth's appellate courts, even if made in *dicta*, are more persuasive than the speculation of the *Byers* court about what the purpose may be.

The *Byers* court contends that, since insurers did not argue that § 1736 limits

stacking prior to defendant Sea's argument in *Chartan*, they must have understood the MVFRL to permit unlimited stacking. 745 F.Supp. at 1080. The court in *Byers* seems to maintain that, because some persons affected by a statute assume that it permits or prohibits something, the courts should thereafter interpret and apply the statute accordingly. The ramifications of this approach on a variety of constitutional and statutory rights and prohibitions found by the courts, despite years of acquiescence by affected parties in contrary interpretations, would be profound. It also does not explain why we should disregard the contrary understanding of § 1736 advanced by Sea and other insurers before the courts.

Further, to state what is not the purpose of a statutory provision does little to identify what the purpose is. The closest the *Byers* court gets to ascertaining the purpose and effect of § 1736 is a statement that "The legislature could have wished to limit class two uninsured and underinsured motorist coverage." 745 F.Supp. at 1081. The *Byers* court does not explain the contradiction between that speculation and its statement that the general purpose of the statute was to provide "increased protection for accident victims." 745 F.Supp. at 1078. The *Byers* court does not suggest why this statement of purpose was intended to apply to some but not all accident victims.

The *Byers* court's speculation about the purpose of § 1736 is also undercut by the fact that the benefits available to class two insureds are solely a function of the coverage purchased by vehicle owners. It is the vehicle owner who decides on the amount of coverage and there is absolutely no limit on the extent of coverage that he may purchase. As stated by the Superior Court en banc in *Wolgemuth*, the purpose of § 1736 clearly is to create an incentive for vehicle owners to provide the maximum feasible protection for potential accident victims by prohibiting them from obtaining more (uninsured/underinsured) coverage for themselves than they provide (via liability coverage) for others.

The court in *Byers* next states that to apply the principle behind § 1736 to limit stacking by multi-vehicle owners would permit insurers to avoid coverage they charged for. The record in *Chartan* and the opinion in *Byers* are devoid of any indication of what, if any, additional premiums may have been charged on the assumption that stacking beyond the limits of liability coverage might be allowed. Moreover, the *Byers* court has no compunction about requiring an insurance company to provide coverage for which it did not charge and which its policy expressly precludes because of a public policy against prohibiting stacking. This court sees little practical distinction between forcing insurers to pay millions of dollars in coverage for which no premium was received because of a general public policy favoring stacking and enforcing the public policy embodied in § 1736 even where an insured may have paid several hundred dollars for a presumed right to stack beyond the limit of his liability coverage. This is not a case for liberally construing any question of coverage in favor of the insured. This is because the purpose of § 1736 is not to protect the insured but rather his potential victims, *i.e.*, the driving and walking public.

Lastly, the court in *Byers* opines that the addition of § 1738 by the current legislature in its substantial revision of the MVFRL demonstrates that the legislature in 1984 did not intend that § 1736 operate to preclude unlimited stacking.[3] Section 1738 merely appears to be a codification of the general right to stack presumed by the courts. As Judge Weiner noted in *West American Insurance*, "Section 1738 does not explicitly permit stacking of uninsured

---

**3.** Section 1738 of the MVFRL, enacted February 7, 1990, P.L. No. 6, § 12, effective July 1, 1990, provides, in pertinent part:

"(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverage available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured."

motorist coverages in excess of the liability limits of an applicable insurance policy." 1990 WL 87284, 1990 U.S.Dist. LEXIS 7806, at *9. The *Byers* court finds it significant that the legislature did not simultaneously amend § 1736. If the legislature intended to eliminate the impact of § 1736 on the extent of stacking, it is just as logical to expect it to expressly say so by using language like "without limit" or "without regard to the limitation imposed in § 1736" when enacting § 1738. In any event, § 1738 does not apply retroactively and is inapplicable to cases which must be decided under the 1984 law.

In short, the court believes that, while reasonable jurists can differ, the Pennsylvania Supreme Court would find that § 1736 has a purpose and that it is to create a substantial incentive for vehicle owners to provide for potential accident victims by limiting the coverage they may obtain for themselves to that which they provide for the public. The court does not believe that the legislature in 1984 intended, or that the Pennsylvania Supreme Court even employing a minimal scrutiny standard would find that it is rational, to permit some drivers to obtain more protection for themselves than they provide for victims of their negligence while others are prohibited from doing so based on the number of automobiles they are fortunate enough to own.

## II. *Plaintiff's Request to Stack Coverage Pursuant to the Terms of the Sea Insurance Policy.*

▪ Plaintiff contends that, even if § 1736 operates to bar stacking of uninsured benefits in excess of maximum liability coverage, she should nonetheless be permitted to do so under the express terms of her Sea policy. Plaintiff's argument appears to run as follows:

(1) An ambiguity exists in the Sea policy which permits the stacking of uninsured benefits (by incorporation of all the primary policy's terms and conditions of coverage), but expressly limits Sea's liability to $1,000,000;[4]

(2) Under common law principles of contractual construction, this ambiguity must be resolved in plaintiff's favor so as to permit stacking of uninsured benefits up to $2,000,000.

(3) Because the Sea policy therefore permits plaintiff to recover uninsured benefits in excess of her maximum liability coverage, its terms run afoul of the public policy underlying § 1736;

(4) While the terms of a statute normally preempt the terms of a contract, the latter should control when the statute confers a benefit on the insurer which it chooses to waive, relying on *Capelli v. Twin City Fire Ins. Co.*, 209 N.J.Super. 552, 555, 508 A.2d 269 (1986); *Howard v. Farmers Ins. Co., Inc.*, 5 Kan.App.2d 499, 619 P.2d 160, 164–66 (1980); *Conte v. Yorkshire Ins. Co. of N.Y.*, 5 Misc.2d 670, 163 N.Y.S.2d 28 (1957);

(5) Section 1736 is for the benefit of insurers;

(6) Sea contracted to waive this statutorily-conferred benefit, and therefore the terms of the contract should control and plaintiff should be permitted to stack uninsured motorist coverage to recover up to $2,000,000.

Plaintiff's argument must ultimately fail as it is based on a number of faulty assumptions. First, contrary to plaintiff's protestations, the court finds no ambiguity in the language of the Sea policy. A court should read policy provisions to avoid ambiguities, if possible, and should not torture the language to create them. *See St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir.1981). Here, it is thoroughly consistent to permit, in one clause, an insured to stack

---

**4.** The Aetna primary policy states, in pertinent part:

With respect to damages caused by the owner or operator of an **uninsured motor vehicle,** the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of **covered persons** or claims made. However, if more than one vehicle is shown in the Declarations as subject to this coverage, *our* maximum limit of liability shall be the sum of the applicable limits for all vehicles.

(Bold in original and emphasis added).

uninsured motorist benefits and, in another clause, to limit the insurer's liability, irrespective of stacking, to the insured's third-party liability coverage. Indeed, in this sense, the Sea policy mirrors the MVFRL's statutory framework itself, which permits stacking so long as an insured recovers no more for his injuries than he is required to pay for the injuries he negligently causes to innocent third parties.

Further, plaintiff erroneously concludes that Sea is contractually bound by Aetna's own limit of liability even though the Sea policy contains a separate "Limit of Liability" clause. The excess policy conspicuously and unambiguously states on the cover page that the insurer's liability is limited to $1,000,000.

Finally, unlike the statutes at issue in the cases relied on by plaintiff, § 1736 was not intended to benefit insurers. It was designed to protect the public by requiring the insured to obtain at least as much protection for third parties injured by his negligence as for himself. *See* J. Ronca, L. Sloane & J. Mundy, *An Analysis of the Financial Responsibility Law 104*, § 6:11 (1986). Rather than intended to benefit either party to the insurance contract, § 1736 was intended to protect *third parties*, specifically, potential victims of the insured's negligence.

### III. *Plaintiff's Request to Submit a Claim for Prejudgment Interest to Arbitration*

■■■ Pennsylvania law provides for prejudgment and prepayment interest from the time an overdue contractual obligation becomes reasonably ascertainable. *Trustees of University of Pennsylvania v. Lexington Ins. Co.*, 815 F.2d 890, 908 (3d Cir. 1987); *Pennsylvania Turnpike Comm'n v. Sanders & Thomas, Inc.*, 461 Pa. 420, 433, 336 A.2d 609 (1975). *See also Restatement of Contracts* § 337(a). In the present case, plaintiff contends that her entitlement to $1,000,000 in excess uninsured motorist benefits has been clear for some time, and that the apparent dispute among the parties regarding when this entitlement became reasonably ascertainable

is a factual issue which precludes the entry of final judgment.

Sea contends that prejudgment interest is not awardable as a matter of law because plaintiff's claim "essentially is grounded in tort." The court rejects this argument. Merely because Sea's contractual obligations are defined by reference to a third party's liability to plaintiff in tort does not convert plaintiff's claim *against Sea* into a tort action. Plaintiff's uninsured motorist claim is based on a contractual obligation, controlled by a contractual limit of liability, subject to a contract statute of limitations, and is in every respect a contract claim.

Plaintiff is entitled to prejudgment interest from the date it was reasonably ascertainable that decedent's damages equaled or exceeded $1,000,000, and Sea was contractually obligated to insure plaintiff. While an arbitration panel is arguably authorized to address the first prong of this inquiry, it is certainly not empowered to reach the second prong. The applicable policy provision provides that only issues of fault and damage amount will be submitted to arbitration. Determining the date when Sea first became contractually obligated to plaintiff requires an examination of plaintiff's compliance with applicable claim procedures, an issue unrelated to fault or damage amount. The assessment of prejudgment interest is therefore a matter properly left to the court.

Accordingly, defendant Sea's motion for full summary judgment will be held in abeyance pending a stipulation by counsel or a determination by the court, after an appropriate hearing, of when decedent's $1,000,000 in damages and Sea's obligation to insure plaintiff became reasonably ascertainable.

An appropriate Order follows.

### ORDER

AND NOW, this 29th day of August, 1990, upon consideration of defendant Sea Insurance Company, Ltd.'s Motion for Complete Summary Judgment, and plaintiff's response thereto including her request for reconsideration, IT IS HEREBY

ORDERED that plaintiff's request for reconsideration of the court's Order of November 16, 1989 is DENIED and that defendant's Motion will be held in ABEYANCE pending a stipulation by counsel or determination by this court of the proper amount of prejudgment interest to be awarded to plaintiff.

## ORDER

AND NOW, this 19th day of October, 1990, pursuant to the court's Memorandum and Order of August 29, 1990 and the Stipulation of the parties of September 19, 1990, and consistent with *Trustees of the University of Pennsylvania v. Lexington Ins. Co.*, 815 F.2d 890, 908 (3d Cir.1987); *Girard Bank v. John Hancock Mut. Life Ins. Co.*, 524 F.Supp. 884, 897 (E.D.Pa. 1981), *aff'd*, 688 F.2d 820 (3d Cir.1982); *Liberty Fish Co. v. The Home Indemnity Co.*, Civ. No. 89–5201, slip op. at 2–4, 1990 WL 161139 (E.D.Pa. Oct. 17, 1990); and, 41 Pa.Cons.Stat.Ann. § 202, IT IS HEREBY ORDERED that JUDGMENT is entered for the plaintiff and against the defendants for $1,000,000 plus 6% interest from October 17, 1988.